SEXAUER & SON, Respondent v. WATERTOWN COOPER-ATIVE ELEVATOR ASSOCIATION, Appellant

(79 N.W.2d 220)

(File No. 9565. Opinion filed November 8, 1956)

Rehearing denied, February 8, 1957

**Andrew E. Foley** and **Arthur R. Henrikson,** Watertown, and **Leo P. Flynn,** Milbank, for Defendant and Appellant.

**Lund & McCann,** Brookings, for Plaintiff and Respondent.

ROBERTS, P. J. This is an appeal from a judgment awarding damages to the plaintiff for the breach of an implied warranty of variey in the sale of flax. Plaintiff is a corporation with its principal place of business in Brookings, South Dakota, and its business includes the buying and selling of seed grains. The defendant corporation at the time of the transactions herein involved operated two grain elevators in Watertown, South Dakota.

It appears that A. A. Hoch, an employee of the plaintiff, went to the place of business of the defendant in February, 1951, and stated to its manager George Hurd that he needed 250 bushels of Sheyenne flax. The negotiations resulted in the sale and delivery to the plaintiff of that amount of flax sacked in 2½ bushel bags. The consignment was given a lot number and samples were taken from each of the hundred bags and an analysis was made of the composite sample. The bags were then machine sewed. Tags showing the

result of the analysis were prepared which read as follows: "Sheyenne Flax S. Dak. Purity 99.00%. Germ. 93%. Other Crop .20%. Tested 2-51. Inert .20%. Nox. Free. Weeds .60%. Lot 4245". It is agreed that this flax so labeled was of the variety commonly known as Sheyenne.

The controversy arose out of a second sale and delivery of flax. It appears that plaintiff needing more flax seed to fill orders from farmers residing in the vicinity of Arlington, South Dakota, where it owned and operated a grain elevator, called by telephone about March 1, 1951, to inquire if defendant corporation could furnish an additional hundred bags of Sheyenne flax and Mr. Hurd replied that he had a number of orders and did not then know whether or not he could furnish that amount. Mr. Hoch testified that about a month later when he again went to defendant's place of business, Mr. Hurd stated to him: "Well, you can have another hundred bags out of the same batch." As to the second sale and delivery of flax, Mr. Hurd testified:

"Q. You were not present then at the time that George P. Sexauer & Son took delivery of this last load of 100 sacks? A. No. * * *

"Q. Who is Mr. Johnson? A. Mr. Johnson was assistant manager at the time this flax was delivered.

"Q. Was he in charge of the elevator during your absence? A. That is right.

"Q. Now when Mr. Madsen called you—sometime the first part of April I believe you said it was? A. Yes.

"Q. Do you remember just what Mr. Madsen said on the telephone? A. Not word for word, no.

"Q. Didn't he say, 'I have to have some more Sheyenne flax'? A. Yes.

"Q. That is what he said? A. Yes.

"Q. What did you say? A. I said I could let him have some of the first batch.

"Q. The same as the first batch? A. Yes.

"Q. And by the first batch you meant the shipment made in February? A. That is right.

"Q. And then you left orders with Mr. Johnson to deliver one hundred bags of that Sheyenne flax to Sexauer. A. Yes sir."

The witness William Johnson testified:

"Q. Actually you don't know what variety of flax that was that you loaded? A. I don't know except that I was told it was flax for Sexauers.

"Q. That is all you know about it? A. Yes."

There is testimony in the record to the effect that on April 7, 1951, thirty bags of the first consignment of flax was loaded on plaintiff's truck at Brookings and delivered to its elevator in Arlington; that plaintiff's truck driver continuing on to Watertown hauled from defendant's warehouse to the elevator in Arlington 250 bushels of flax contained in 100 hand-sewed bags. Without analysis, tags prepared by using the same stencil made for the first consignment of flax were attached to each of these bags.

It seems clear that the farmers who purchased this flax delivered to the Arlington elevator suffered substantial losses because a variety of seed other than the rust resistant Sheyenne was supplied. Victor A. Dirks, assistant agronomist at the South Dakota Experiment Station at Brookings, testified that Sheyenne flax is resistant to all races of rust that infest this state and is not distinguishable from all other varieties by visual inspection; that he made an inspection of the various fields seeded by these farmers and found them "streaked" and there were indications of rust infestation. One of the farmers had two unopened bags of flax that he had not seeded, one was machine-sewed and the other hand-sewed. Samples were taken from these bags and plants were grown from seeds in each. Mr. Dirks testified that as a result of these tests he concluded that the sample taken from the machine-sewed bag "was at least largely Sheyenne" and that the sample taken from the hand-sewed bag "was definitely not Sheyenne".

The record shows that actions were instituted by the farmers to whom the flax seed was sold against the plaintiff in the present action to recover as damages the difference between the value of the crops actually grown from the seed

furnished and that of the crops which would have been produced had all the seed been of the variety ordered. Claiming that such liability on its part was secondary, George P. Sexauer & Son notified the Watertown Cooperative Elevator Association of the commencement of these actions and requested it to assume the defenses therein. This it declined to do. Settlements of the claims were made and the present action was commenced to recover the amounts paid in settlement and necessary expenses of litigation.

■ It is a general rule that the sale of seed by name gives rise to an implied warranty that the seed is of the variety described. 77 C.J.S., Sales, § 330(2)f; and see cases collected in annotations in 16 A.L.R. 875, 32 A.L.R. 1243, 62 A.L.R. 453, 117 A.L.R. 473 and 168 A.L.R. 581. The Uniform Sales Act has not changed this rule. See Lee v. Cohrt, 57 S.D. 387, 232 N.W. 900. That Act, SDC 54.0114, provides that where there is a contract to sell or a "sale of goods by description, there is an implied warranty that the goods shall correspond with the description".

■ In Parrish v. Kotthoff, 128 Or. 529, 274 P. 1108, 1109, it is stated: "Where specified goods are sold in compliance with an order describing the goods and the seller furnishes them, he is held to warrant that the goods are of the kind asked for. In such case it is a substantive part of the contract that the goods shall be of the kind ordered. That is one of the terms of the contract without the fulfillment of which the contract cannot be performed. * * * Rosen rye is a well-known article of trade, and it was wholly immaterial in selling it, so far as defendant's liability is concerned, whether he knew at the time of the sale that the article sold was or was not Rosen rye. Having undertaken to sell plaintiff Rosen rye, defendant's obligation could not be performed without furnishing rye which answered that description. Without plaintiff's consent, defendant could no more substitute another kind of rye for Rosen rye than he could substitute barley or some other kind of grain for rye. He was bound to furnish Rosen rye, for that was one of the terms of his contract. In accepting the goods tendered as fulfillment of the contract, plaintiff not being able to determine

from an inspection that the seed was not of the kind ordered, relied and had a right to rely upon the description of the goods ordered." As to the liability of a dealer selling to another dealer seed identified by a particular name, the author in 2 Sutherland on Damages, Fourth Edition, § 675, observes: "Where seeds are sold with a warranty that they are of a kind identified by a particular name, with notice that the purchaser intends to sell them again to persons who will purchase for the purpose of sowing them, if the warranty is untrue there seems to be no difference in principle as to the subject of damages between such a sale and one with such warranty where the purchaser is known to buy for the purpose of sowing them himself. The warranty to one buying seed to sell again justifies him in warranting it accordingly to his customers; and as they have recourse to him for damages estimated by the standard mentioned in the first paragraphs of the preceding section that is also the measure of his loss as against his vendor".

█ █ We think that the jury was justified in finding that the defendant contracted to sell and deliver Sheyenne flax and that the second consignment delivered to plaintiff by defendant was not of the variety named. The sale by description was sufficient to constitute a warranty that the seed was of the variety named and the buyer not being able to determine from an inspection that the seed was not of such variety had a right to rely on the representation. It is not material whether defendant delivered another variety of seed by mistake.

█ It is contended that the seed in question was labeled by plaintiff in violation of statute and that plaintiff comes within the purview of the rule that a party cannot maintain a cause of action if in order to establish it he must rely in whole or in part on an illegal act or transaction to which he was a party. Understanding of this contention requires reference to statutory provisions regulating the handling and sale of seeds. Under the provisions of SDC Supp. 4.10A03, each container of agricultural seed sold in this state must have attached thereto a label or tag and among the label requirements is the giving of information as to the

"Commonly accepted name of (1) kind, or (2) kind and variety, or (3) kind and type of each agricultural seed component in excess of five per cent of the whole, and percentage by weight of each in the order of its predominance. SDC Supp. 4.10A09 provides that it shall be unlawful to sell any seed which shall be mislabeled or which is falsely labeled, represented or advertised in any respect. Under the provisions of SDC Supp. 4.9913, a violation of these provisions contitutes a misdemeanor. Subdivision 2 of SDC Supp. 4.10A05 provides: "No person shall be subject to the penalties of this chapter for having sold, offered or exposed for sal in this state any agricultural or vegetable seed, which were incorrectly labeled or represented as to kind, variety, type or origin; which seeds cannot be identified by examination thereof, unless he has failed to obtain an invoice or grower's declaration giving kind, or kind and variety, or kind and type, and origin, if required, and to take such other precautions as may be necessary to insure the identity to be that as stated on the label."

Defendant argues that since the purchase of the seed in question was not from the grower and plaintiff did not obtain an invoice designating the variety it had no authority to attach tags representing that the flax seed was Sheyenne. Assuming, as defendant contends, that the seed was mislabeled within the meaning of the statute this does not do away with the fact that defendant failed to fulfill its obligation to furnish flax of the variety represented. Plaintiff bases its cause of action not upon its own transgression of the statute, but upon defendant's representation. Liability of the defendant could have been established without any reference to an invoice or reliance on the claimed illegal act. The decisions are in accord that illegality constitutes no defense when merely collateral to the cause of action sued on. 1 C.J.S., Actions, § 13 (b). The case of Hinkle v. Railway Express Agency, 242 Ala. 374, 6 So.2d 417, upon which reliance is placed as foreclosing action herein is distinguishable. The defendant in that case in violation of statute failed to attach a proper label to sweet potato vines shipped by it

to the plaintiff. When the plants were delivered they did not bear the tag required by statute. The court held that the damages complained of would not have been sustained without the active participation of the plaintiff in accepting the shipment and that the participation of the plaintiff in the illegal transaction precluded recovery. The illegality, if any, was collateral to the transaction in the instant case and public policy does not preclude recovery.

The judgment appealed from is affirmed.

All the Judges concur.