6 So.2d 417

### HINKLE v. RAILWAY EXPRESS AGENCY.

6 Div. 711.

Supreme Court of Alabama.

Jan. 22, 1942.

Rehearing Denied March 5, 1942.

H. H. Kinney and Joe V. Knight, both of Cullman, and S. A. Lynne, of Decatur, for appellant.

St. John & St. John, of Cullman, for appellee.

376

LIVINGSTON, Justice.

The complaint, consisting of four counts, is based upon alleged violations of the provisions of sections 301, 302 and 304 of the Alabama Agricultural Code of 1927, Code 1940, Title 2, sections 461, 462 and 464.

Demurrers were sustained to each count of the complaint, and the plaintiff took a voluntary non-suit. Plaintiff filed motion for a new trial, which was overruled by the trial court, and to which ruling plaintiff reserved an exception. The questions presented for review do not call for a discussion of the propriety of this procedure.

For an understanding of the questions presented on this appeal we set forth count one of the complaint:

"Plaintiff claims of the defendant Three Thousand ($3,000.00) Dollars damages for that on or about to-wit: May 1, 1939, the defendant, Railway Express Agency, a corporation, was then a common carrier or agency for a common carrier, doing business in the states of Florida and Alabama, and as such common carrier accepted a shipment of sweet potato plants or sweet potato vine cuttings from a point in the state of Florida, to be shipped to the plaintiff, Herron Hinkle, at Hanceville, Alabama, Cullman County, Alabama, which said sweet potato plants or sweet potato vine cuttings and area or locality in the state of Florida from which said sweet potato plants or sweet potato vine cuttings were shipped had been quarantined because of a dangerous insect, pest or disease. Plaintiff avers that said sweet potato plants or sweet potato vine cuttings were shipped by the defendant from said area or locality in Florida and were delivered to him in Cullman County, Alabama, by the defendant's agents, servants or employees, while acting within the line and scope of their employment, and that said sweet potato plants or sweet potato vine cuttings were shipped from a quarantined area in the state of Florida, into the state of Alabama, which said fact or facts were known to the defendant or should have been known to the defendant, in violation of section 304 of the Agricultural Code of Alabama [Code 1940, Tit. 2, § 464]; that said sweet potato plants or sweet potato vine cuttings were delivered to plaintiff and carried by him to his farm about eight miles west of Cullman; that later plaintiff inspected said plants or vine cuttings and found that the same were infected with a dangerous insect, pest or disease, and that immediately upon this discovery, the plaintiff reported this fact to the Agricultural Department of the state of Alabama, and inspectors of the said Agricultural Department of the State examined said plants or vine cuttings and found them to be infected with a dangerous insect, pest or disease. That said sweet potato plants or sweet potato vine cuttings were condemned, confiscated and ordered de-

stroyed by the Agricultural Department of the state of Alabama, and the lands of the plaintiff, Herron Hinkle, were quarantined for the year 1939, and as a result plaintiff was caused to lose large sums of money, was caused to lose his potato crop, was prevented from using or selling any plants grown on his land, was prevented from using his potato house for storage or any other purpose during the year 1939, was put to great expense, trouble and labor in destroying said plants, was ordered to destroy other potato plants and beds on his said property, was caused to lose a long time from his work, was caused to lose a great number of orders which he had received and did receive for potato plants, his reputation as a plant grower and operator of a plant farm was injured and impaired, was greatly humiliated and embarrassed and was caused to suffer great mental pain and anguish.

"Plaintiff further avers that all of his said damages were the direct and proximate consequence of defendant's accepting said shipment of sweet potato plants or sweet potato vine cuttings, which said plants did not bear the official tag issued by the Commissioner or the inspection tag of the Federal Horticultural Board, and delivering such plants or vine cuttings to the plaintiff in Cullman County, Alabama, in violation of section 304 of the Agricultural Code of the state of Alabama, hence this suit."

Count 2, in its material aspects, sets up substantially the same facts, but alleges a violation of section 302 of the Alabama Agricultural Code of 1927, Code of 1940, Title 2, section 462, in that the plants or vine cuttings did not bear the official tag issued by the commissioner or the inspection tag of the Federal Horticultural Board. However, the count appears to be based on an alleged violation of section 304 of the Agricultural Code, supra. Count 3 likewise alleges substantially the same facts set out in count 1, and alleges a violation of sections 301, 302 and 304 of the Alabama Agricultural Code of 1927, Code of 1940, Title 2, sections 461, 462 and 464. Count 4 contains substantially the same allegations of fact as count 1, and alleges a violation of sections 301 and 302 of the Alabama Agricultural Code supra.

Apt grounds of demurrer raise two principal questions for review.

The Act of Congress of August 20, 1912, as amended by the Act of March 4, 1917, 7 U.S.C.A. § 161, provides that the Secretary of Agriculture is authorized and directed to quarantine any state, territory or district of the United States, or any portion thereof, when he shall determine that such quarantine is necessary to prevent the spread of a dangerous plant disease or insect infestation, new to or not theretofore widely prevalent or distributed within and throughout the United States; and, further, that it shall be unlawful to move or allow to be moved any class of nursery stock or any other class of plants, fruits, vegetables, roots, bulbs, seeds or other plant products, or any class of stone or quarry products or any other article of any character whatsoever, capable of carrying any dangerous plant disease or insect infestation from any quarantined state or territory or district of the United States, or quarantined portion thereof, into or through any other state, territory or district, in manner or method or under conditions other than those prescribed by the Secretary of Agriculture.

On April 13, 1926, the Congress further amended said Act as follows:

"Provided further, That until the Secretary of Agriculture shall have made a determination that such a quarantine is necessary and has duly established the same with reference to any dangerous plant disease or insect infestation, as hereinabove provided, nothing in this chapter shall be construed to prevent any State, Territory, Insular Possession, or District from promulgating, enacting, and enforcing any quarantine, prohibiting or restricting the transportation of any class of nursery stock, plant, fruit, seed, or other product or article subject to the restrictions of this section, into or through such State, Territory, District, or portion thereof, from any other State, Territory, District, or portion thereof, when it shall be found, by the State, Territory, or District promulgating or enacting the same, that such dangerous plant disease or insect infestation exists in such other State, Territory, District, or portion thereof:

"Provided further, That the Secretary of Agriculture is hereby authorized, whenever he deems such action advisable and necessary to carry out the purposes of this chapter, to cooperate with any State, Territory, or District, in connection with any quarantine, enacted or promulgated by such State, Territory, or District, as specified in the preceding proviso:

"Provided further, That any nursery stock, plant, fruit, seed, or other product or article, subject to the restrictions of this section, a quarantine with respect to which shall have been established by the Secretary of Agriculture under the provisions of this chapter shall, when transported to, into, or through any State, Territory, or District, in violation of such quarantine, be subject to the operation and effect of the laws of such State, Territory, or District, enacted in the exercise of its police powers, to the same extent and in the same manner as though such nursery stock, plant, fruit, seed, or other product or article had been produced in such State, Territory, or District, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise."

It is insisted by appellee, defendant in the court below, that the complaint should negative action by the Secretary of Agriculture of the United States under the first proviso of the amendment of 1926, set out above, before the State statutes referred to, insofar as they relate to interstate shipments, can be given application.

No case is cited, nor has our search revealed one, determining the scope, meaning and effect of the 1926 amendment. In our opinion, the purpose of the Congress in the enactment of the 1926 amendment was to reinvest the states with their police power. This is apparent from the express language contained in the last proviso of the amendment. The case of Oregon-Washington Railroad & Navigation Co. v. State of Washington, 270 U.S. 87, 46 S.Ct. 279, 70 L.Ed. 482, decided prior to the amendment, is not applicable. Obviously, the amendment was enacted to meet this decision. Appellee's first insistence is therefore without merit.

We are of the opinion, however, that the above and foregoing aside, the demurrers were properly sustained to each count of the complaint.

We note with particularity that each count of the complaint avers that when the plants were delivered to the plaintiff, they did not bear the tag required by section 302, supra. It thus appears that the wrong charged against the defendant, and upon which plaintiff attempts to base his cause of action, is the violation of the cited statute.

Ordinarily where a complaint charges a breach of a duty owed to the plaintiff in such manner that damages are presumed, it states a cause of action for nominal damages at least. If a count claims damages deemed to be remote and which are not recoverable in the action, the count is not for that reason demurrable. The proper procedure in such a case is for the defendant to insist upon a motion to strike that portion claiming such damages or to object to the evidence seeking to establish them. Blankenship v. Lanier, 212. Ala. 60, 101 So. 763. We are of the opinion, however, that neither count of the complaint here presents such a question. It may be true that the defendant has. committed a positive wrong, but general or nominal damages will not be presumed from a mere wrongful act alleged. Walls. et al. v. C. D. Smith & Co., 167 Ala. 138, 52 So. 320, 140 Am.St.Rep. 24.

The obvious purpose of the statutes referred to is the protection of the general public and to prevent the spread of disease of plants in the agricultural sections of this State. The plaintiff belongs. to a class sought to be protected, but in order to make the wrong of the defendant actionable, he must allege and prove that he has suffered injury peculiar to himself, different in kind and degree from that sustained by the public. Walls et al. v. C. D. Smith & Co., supra. In seeking to bring the complaint within the purview of the above rule, the plaintiff is confronted with another obstacle. A person cannot maintain a cause of action if, in order to establish it, he must rely in whole or in part on an illegal or immoral act or transaction to which he is a party. 1 Corpus Juris Secundum, Actions, page 996, § 13; 1 Corpus Juris page 957, § 52. An analogy is presented with respect to an illegal contract, where the plaintiff fails if, in order to prove his case, he must resort to such contract. 13 Corpus Juris, page 503, section 445, 17 C.J.S., Contracts, § 276. These principles apply whether the cause of action is in contract or in tort. 1 Corpus Juris Secundum, Actions, page 999, § 13.

We have shown that the plaintiff cannot maintain his action without showing damages peculiar to himself. The damages. complained of could not have been suffered without the active participation of the plaintiff in accepting the shipment. A delivery, as used in the statute, necessarily presupposes three features, viz., chattels that are to be delivered, a party who is to make the delivery, and a party who is to ac-

cept or receive the delivery. Such a delivery implies mutual acts of the carrier and the consignee. United States v. McCready, C.C., 11 F. 225; Price v. Powell, 3 N.Y. 322; Ostrander v. Brown, 15 Johns., N.Y., 39–42, 8 Am.Dec. 211. There must be both a manual transfer and an operation of minds intending to enter into the contract. Storey v. Storey, 7 Cir., 214 F. 973.

The plants did not bear the official tag required. For aught appearing, the plaintiff knew the facts alleged in the complaint. We do not have before us a case where illegal acts or contributory negligence on the part of the plaintiff must be set up by special pleas. The participation of the plaintiff appearing on the face of the complaint in accepting plants not bearing the required tag, it was incumbent on the plaintiff to relieve himself, by appropriate averments, from the imputation of wrongdoing. He is presumed to have stated his case in the most favorable light, and thus allows all adverse inferences of wrongdoing on his part to be drawn. McClusky v. Duncan, 216 Ala. 388, 113 So. 250; Western Ry. of Alabama v. Madison, 16 Ala.App. 588, 80 So. 162.

Counts 1 and 2 allege that the potato plants were delivered to plaintiff and carried by him to his farm about eight miles from Cullman. But for his action in moving the plants to his farm the damage complained of would not have occurred.

This is not a case where the wrong or negligence of plaintiff merely created a condition or status upon which the subsequent wrong of the defendant operated to produce injury, and therefore the contribution of plaintiff would be no defense in that it was not a concurrent proximate cause of the injury, as set out in Reaves v. Anniston Knitting Mills, 154 Ala. 565, 572, 45 So. 702; but rather the reverse, in that defendant merely created a condition upon which the subsequent act of plaintiff caused the injury without showing anything relieving him from the imputation of wrongdoing.

In our opinion the demurrers were properly sustained as to all counts of the complaint.

Affirmed.

GARDNER, C. J., and BOULDIN and FOSTER, JJ., concur.