MADDOX, Justice.
Steven Thompson (plaintiff/appellant) filed this action to recover damages for personal injuries he sustained early one morning when the motor vehicle in which he was a passenger struck an unmarked gate maintained by Champion International Corporation (Champion).
In the early morning hours of August 3, 1984, Thompson met with two friends, Jeff Tirey and Butch Fuller, in the parking lot of a local nightclub. At approximately 1:00 a.m., the three decided to drive to Tirey’s mobile home. Thompson and Fuller stopped at a convenience store while en route to Tirey’s home and purchased gas and a six pack of beer. Upon arriving at Tirey’s mobile home, the men sat on the porch for approximately one hour talking and drinking beer.
At approximately 2:30 a.m., Tirey suggested that they take a ride in his dune buggy. Tirey drove the dune buggy, with Fuller sitting in the front seat. Thompson sat on a pillow between the two seats, and held on to the roll bar. Initially, Tirey proceeded along a county highway; he then turned left onto a dirt and gravel company road leading to land owned by Champion. The gate across the road was locked, and Tirey went around the gate by driving over a large dirt mound located to the left of the gate.
The road on which Thompson and his friends entered the Champion land had been constructed by Champion employees in 1983 for logging purposes, and also to afford access to the land for other company purposes. The gate in question was also erected in 1983 and was only open during logging operations by Champion. It is undisputed that the gate could clearly be seen from the county road during the day.
Thompson and his friends drove the dune buggy several miles back on Champion land and rode around for thirty to forty-five minutes. Upon leaving the Champion property, Tirey rounded a curve in the company road at approximately 30 m.p.h. and collided with the same gate he had earlier gone around to gain access to the property. The accident occured between 3:30 and 4:00 a.m.
Thompson sued Champion. The complaint contained claims based on negligence, wantonness, failure to warn, and statutory or regulatory violation. Champion moved for a directed verdict at the conclusion of the plaintiff’s case, asserting that Thompson had failed to establish that as a trespasser he had been intentionally injured by Champion and that the provisions of the Alabama Manual of Uniform Traffic Control Devices (A.M.U.T.C.D.) had no application to the roadway in question. The trial court granted the directed verdict. This appeal followed.
The first issue raised on appeal is whether the trial court erred when it directed a verdict in favor of Champion and found that Thompson had failed to establish a prima facie case that Champion had breached any duty owed to Thompson by erecting the gate. Thompson contends that this case does not involve a personal injury action brought by a trespasser against a landowner; instead, Thompson characterizes the case as one involving a landowner owning property immediately adjacent to a public highway. Thompson argues that the special factual circumstances of this case significantly alter Champion’s legal liability with respect to the unmarked gate across Champion’s roadway.
In ruling upon the propriety of a directed verdict, this Court must view the entire evidence in a light most favorable to the party opposing the motion. When a reasonable inference can be drawn which proves to be adverse to the moving party, a motion for directed verdict should be denied. City of Birmingham v. Wright, 379 So.2d 1264 (Ala.1980). The scintilla evidence rule is the standard by which a trial judge is to determine the propriety of a directed verdict. Quillen v. Quillen, 388 So.2d 985 (Ala.1980).
*1050 In negligence cases, the duty owed by a landowner depends upon the status of the injured party in relation to the defendant’s land. It is well settled law in this state that in regard to a trespasser, the landowner owes only the duty not to wantonly or intentionally injure him. Tolbert v. Gulsby, 333 So.2d 129 (Ala.1976). There is no duty to warn of open and obvious defects which the trespasser should be aware of in the exercise of reasonable care. Owens v. National Security of Alabama, Inc., 454 So.2d 1387 (Ala.1984). The legal doctrine that a landowner may not erect a “trap” or “pitfall” to injure a trespasser is rested upon the theory that if he does so, then the owner “has expected the trespasser and prepared an injury.” Moseley v. Alabama Power Co., 246 Ala. 416, 419, 21 So.2d 305, 308 (1945).
Thompson testified that he never received permission to enter Champion’s land. The evidence is also undisputed that the road leading to the Champion land was constructed by Champion employees in 1983 to allow company personnel operating company equipment access to the land for logging operations. Additionally, hunters and pleasure riders were allowed to use the road only if they obtained a permit from Champion. The driver of the dune buggy saw the locked gate across the road and drove the dune buggy over the hill to get around the gate and thereby gain access to the land. The gate with which Thompson and his friends collided had been in place for eight months prior to the accident and was “open and obvious” from the abutting highway.
Thompson attempts to alter the duty owed by Champion to him by arguing that his status as a trespasser is not relevant because Champion’s land is located adjacent to a public highway. Thompson argues that as an abutting landowner, Champion was under an obligation to use reasonable care to keep its premises in such a condition as not to create defects or obstructions in the adjacent highway endangering travelers in their lawful use of the land. Thompson cites several cases which hold that a landowner may owe a greater duty to a trespasser where the public has been allowed to use the premises in such a manner, and for such a length of time, that members of the public who go thereon may reasonably presume that the owner will give some warning or notice of any change in the condition of the property. See W.S. Fowler Rental Equipment Co. v. Skipper, 276 Ala. 593, 165 So.2d 375 (1963); Nashville, C. & St. L.R. v. Blackwell, 201 Ala. 657, 79 So. 129 (1918); Barlow v. Los Angeles County Flood Control Dist., 96 Cal. App.2d 979, 216 P.2d 903 (1950).
These cases are easily distinguishable from the case at bar. The undisputed evidence before the trial court was that the road upon which Thompson trespassed was constructed by Champion in November 1983, to allow company equipment access for logging operations. The gate into which the dune buggy collided was erected immediately subsequent to the construction of the road and was clearly visible from the highway. The evidence in this case was that only individuals who obtained permits were allowed to travel on the road. This restriction is in contrast to the situation where a landowner allows all members of the public access to the property and thereby creates a duty upon himself to give a warning or notice of the change.
Additionally, the most readily distinguishable factor between the cases cited by Thompson and this case, is that the driver of the dune buggy actually saw the locked gate into which he later collided. He saw it when he turned onto the company road and wrongfully gained access to the land by climbing a hill directly adjacent to the gate. Obviously, to compare these facts to a factual situation where a member of the public has entered a private road in the mistaken belief that the road was open for public use would be clearly wrong. We refuse, therefore, to place on Champion a burden of giving warning or notice, under these facts.
The second issue raised on appeal is whether Code 1975, § 23-1-131, together with the Alabama Manual of Uniform Traf- *1051 fie Control Devices (A.M.U.T.C.D.), provides a statutory cause of action for injuries sustained as a result of striking an unmarked gate. On appeal, Thompson contends that the trial court erred when it refused to apply A.M.U.T.C.D. to the private roadway in this case.
A predecessor of Code 1975, § 23-1-131 was enacted as part of “The Alabama Highway Code,” Acts of Alabama 1927, Act No. 347, pp. 348-408, and its purpose included providing “for the establishment and maintenance of private roads.”
Predecessor code sections had also made provision for the establishment of a private road. Section 23-1-131 provides:
“In establishing a private road, the same rules must be observed and the same proceedings had as in the case of public roads; but no road must be opened through any person’s yard, garden, orchard, garage, stable, lot, gin-house or curtilage without his consent, and the applicant must pay the owner of the land over which such road passes all damages resulting thereto from the establishment of such road, to be assessed as in case of public roads. (Code 1907, §§ 5842, 5843; Code 1923, § 1371; Acts 1927, No. 347, p. 348; Code 1940, T. 23, § 66.)”
The act was passed to allow an individual to establish a private road across the land of another by applying to the county commission. Section 23-1-131 and its predecessors were enacted to ensure that the rights of private landowners were protected in the establishment of private roads across their land. See Ballard v. Cook, 166 Ala. 105, 52 So. 147 (1910).
Thompson’s argument that section 23-1-131 required that a private landowner comply with all statutes governing markings, signs, and barriers on public roads when constructing and maintaining a private road on its own land for its own private use, is without merit. This statute, when read in conjunction with the case law, does not require a landowner to meet such a standard when merely constructing a roadway across its own land.
Thompson also contends that he was entitled to recover under a private statutory cause of action based upon a violation of A.M.U.T.C.D. Section 32-5A-30, Code 1975, provides that the State of Alabama Highway Department shall adopt a manual and specifications for a uniform system of traffic control devices consistent with the provisions of that chapter and other state laws for use upon highways in the state. Section 32-1-1.1(23), Code 1975, defines a “highway” as “[t]he entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel.” (Emphasis supplied.) Thus, a highway may be distinguished from a “private road or driveway,” which is defined as “[ejvery way or place in private ownership and used for vehicular travel by the owner and those having express or implied permission from the owner, but not by other persons.” Code 1975, § 32-1-1.1(46). (Emphasis supplied.)
The evidence in this case reveals that the road upon which Thompson trespassed was constructed in November 1983 to allow company equipment access for logging operations. The road and gate are located on Champion property and are maintained by Champion. The evidence is undisputed that with the exception of company use, only individuals who obtained permits were allowed to travel on the road.
The company road on which the accident occurred constitutes a “private road or driveway,” as opposed to a “highway,” under the definitions of § 32-1-1.1. The road is privately maintained and it was used for vehicular traffic by the owner and those having express or implied permission from the owner. The road would, therefore, not be governed by the provisions and specifications of the A.M.U.T.C.D.
Assuming, however that the A.M.U.T. C.D. did apply to this case, we would reach the same conclusion. The road in question is not a “highway” as defined by the A.M. U.T.C.D. A “highway” is defined by the A.M.U.T.C.D. as: “The entire width be *1052 tween the boundary lines of every way, publicly maintained, when any part thereof is open to the use of the public for purposes of vehicular travel.” This is the same definition provided by § 32-1-1.1(23). The A.M.U.T.C.D. also defines a “quasi-public parking lot, street or highway” as: “Any parking lot, street or highway owned and maintained by a private individual or corporation for the use of customers, tenants, and employees. ” (Emphasis supplied.) In his brief, plaintiff argues that there was at least a scintilla of evidence that the road was a “quasi-public parking lot, street or highway.” He sets out this evidence as follows:
“[T]he testimony of Jimmy Murphy, Defendant’s District Land Use Manager confirmed that Defendant constructed the roadway in question. (Tr. at 9). Other trial testimony indicated the roadway was used for logging purposes. (Tr. at 30). A life-long resident of the area testified that the roadway in question was used by ‘hunters and people just pleasure riding’. (Tr. at 76). Trial testimony later developed that Defendant ‘sold’ hunting permits to use the roadway (Tr. at 77) and that the roadway was used for cutting and logging timber (Tr. at 78). Lastly, Witness Murphy near the conclusion of Plaintiff’s ease confirmed that the roadway in question ‘was built so that logging trucks could travel it’. (Tr. at 171). Even a cursory review of this testimony certainly leads to the conclusion that Plaintiff mustered more than a scintilla of evidence to support his claim that the roadway was ‘quasi-public’.”
Plaintiff’s argument, therefore, that the road was a “quasi-public parking lot, street, or highway” is without merit.
Here, we need not decide whether a person lawfully on the premises would have a cause of action if the landowner failed to follow the requirements of law relative to markings, signs, and barriers on a “quasi-public parking lot, street or highway.” The evidence is without dispute here, that plaintiff had no permission to be on the land. It follows, therefore, that plaintiff, as a trespasser, cannot claim any benefit from the requirements of the A.M. U.T.C.D. Furthermore, the evidence is clear in this case that plaintiff, to gain access to the land, evaded the very gate he now claims was a “trap” or “pitfall.” The trial court correctly directed a verdict against Thompson on his claim that the facts in this case established a cause of action under the Alabama Manual of Uniform Traffic Control Devices.
The judgment of the trial court is due to be, and it hereby is, affirmed.
AFFIRMED
ALMON, BEATTY and HOUSTON, JJ., concur.
TORBERT, C.J., concurs in the result.