621 So.2d 953 (1993)
Jerry ODEN, as administrator of the Estate of Mark Jeremy Oden, deceased
v.
PEPSI COLA BOTTLING COMPANY OF DECATUR, INC.
Jerry ODEN, as administrator of the Estate of Mark Jeremy Oden, deceased
v.
The VENDO COMPANY.
1910502, 1910503.
Supreme Court of Alabama.
May 28, 1993.
*954 Lanny S. Vines and R. Bradford Wash of Emond & Vines, Birmingham, for Jerry Oden.
J. Glynn Tubb of Eyster, Key, Tubb, Weaver & Roth, Decatur, for Pepsi-Cola Bottling Co. of Decatur, Inc.
W. Stanley Rodgers and George E. Knox, Jr. of Lanier Ford Shaver & Payne P.C., Huntsville, for The Vendo Co.
HORNSBY, Chief Justice.
Jerry Oden, as administrator of the estate of his son Mark Jeremy Oden, appeals from summary judgments in favor of the defendants, Pepsi-Cola Bottling Company of Decatur, Inc. ("Pepsi"), and The Vendo Company ("Vendo"), in a products liability action alleging negligent, wanton, and defective design, labeling, and installation of a soft drink vending machine.[1] We affirm.
On October 18, 1988, Mark died from injuries he sustained when a soft drink vending machine fell on him. The machine was located outside Jack Hopper's general merchandise store in Eva, Alabama. It is undisputed that Mark and a friend were tilting the machine forward to steal drinks from it. To accomplish the theft, Mark's friend stood between the machine and the wall of the store and tilted the machine forward and Mark stood in front of the machine to steady it. Tilting the machine in this manner dislodges drink cans, and the cans drop out of the machine. Mark and his friend had used this tilting procedure successfully that same evening to steal drinks from several other vending machines located in front of the same store. However, Mark was unable to steady this particular machine. It fell on him and crushed him.
The vending machine that is the subject of this litigation was manufactured by Vendo and was sold to Pepsi in 1984. On April 26, 1989, Oden filed this action against Vendo and Pepsi, alleging that the vending machine was defective because it did not carry a warning that the machine would fall over when tilted, did not have an anti-theft device to prevent drink cans from falling out when the machine was tilted forward, and did not have brackets to anchor the vending machine to the ground or to a permanent fixture so as to prevent tilting. Oden also alleged that Vendo and Pepsi had negligently and wantonly failed to provide the above-mentioned safety devices, with knowledge that it was possible to steal drinks from these machines by tilting them forward, and with knowledge that some individuals who were stealing drinks in this manner had been seriously injured or killed.
"In reviewing the disposition of a motion for summary judgment, we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact" and whether the movant was "entitled to a judgment as a matter of law." Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988) (citing Chiniche v. Smith, 374 So.2d 872 (Ala.1979)); Rule 56(c) Ala. R.Civ.P. When the movant has carried the burden of making a prima facie showing, by admissible evidence, that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law, the party opposing the summary judgment motion has the burden of presenting substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala.Code 1975, § 12-21-12.
Because the parties do not dispute the fact that Mark was stealing drinks from the vending machine when it fell on him, we conclude that the judgment in favor of Vendo and Pepsi was proper. In Hinkle v. Railway Express Agency, 242 Ala. 374, 6 So.2d 417 (1942), this Court stated: "A person cannot maintain a cause *955 of action if, in order to establish it, he must rely in whole or part on an illegal or immoral act or transaction to which he is a party." 242 Ala. at 379, 6 So.2d at 421. We interpret the rule in Hinkle to bar any action seeking damages based on injuries that were a direct result of the injured party's knowing and intentional participation in a crime involving moral turpitude.
Many other jurisdictions apply a similar rule. See Amato v. United States, 549 F.Supp. 863, 867 (D.N.J.1982), aff'd without opinion, 729 F.2d 1445 (3d Cir.1984) (bank robber, severely injured by gunfire during a bank robbery, could not recover from FBI on theory that it had acted negligently when, with prior notice of his plan to rob the bank, it failed to apprehend him for the lesser crime of conspiracy); Lord v. Fogcutter Bar, 813 P.2d 660, 662 (Alaska 1991) (intoxicated man who left a bar with a woman and was later convicted of raping her could not recover from bar and bartender on theory that the bartender was criminally negligent in continuing to serve him after he had become intoxicated); Adkinson v. Rossi Arms Co., 659 P.2d 1236, 1239 (Alaska 1983) (man convicted of intentionally shooting a third person could not recover from manufacturer and seller of shotgun on theory that the shotgun was defectively designed); Cole v. Taylor, 301 N.W.2d 766, 768 (Iowa 1981) (wife convicted of murdering her husband could not recover from her psychiatrist on theory that the psychiatrist had negligently failed to prevent her from shooting her husband); Barker v. Kallash, 63 N.Y.2d 19, 24-26, 479 N.Y.S.2d 201, 203, 206, 468 N.E.2d 39, 41-42 (1984) (parents of boy injured while constructing a pipe bomb, in violation of statute, using gun powder extracted from firecrackers, could not recover from the boy who had sold him the firecrackers in violation of state law); Glazier v. Lee, 171 Mich.App. 216, 429 N.W.2d 857, 860 (1988) (man who murdered his girlfriend could not recover from his psychiatrist on theory that the psychiatrist had negligently failed to prevent him from shooting his girlfriend).
This rule promotes the desirable public policy objective of preventing those who knowingly and intentionally engage in an illegal or immoral act involving moral turpitude from imposing liability on others for the consequences of their own behavior. Even so, such a rule derives principally not from consideration for the defendant, "but from a desire to see that those who transgress the moral or criminal code shall not receive aid from the judicial branch of government." Bonnier v. Chicago, B. & Q. R.R., 351 Ill.App. 34, 51, 113 N.E.2d 615, 622 (1953), rev'd on other grounds, 2 Ill.2d 606, 119 N.E.2d 254, cert. denied, 348 U.S. 830, 75 S.Ct. 53, 99 L.Ed. 655 (1954) (citations omitted).
Our interpretation of Hinkle does not foreclose a trespasser's action against a landowner who willfully or wantonly injures him,[2] unless the injuries incurred are a direct result of an injured party's knowing and intentional participation in a crime of moral turpitude. That is, our application of the rule in Hinkle would bar an action by a trespasser injured while attempting to enter an occupied dwelling for the purpose of inflicting bodily injury on the occupant of the dwelling.
For the foregoing reasons, the judgments in favor of Vendo and Pepsi are due to be affirmed.
AFFIRMED.
MADDOX, ALMON, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.
KENNEDY and INGRAM, JJ., concur in the result in part and dissent in part, with separate opinions.
KENNEDY, Justice (concurring in the result in part; dissenting in part).
Although I disagree with its reasoning, I agree with the majority that Vendo was *956 entitled to a judgment on Oden's negligence and wantonness claims. As to all other claims raised I respectfully dissent.
In the interest of brevity, I address my comments only to the resolution of those claims from which I dissent, the AEMLD claims against Vendo and Pepsi and the negligence and wantonness claims against Pepsi.
Mark Oden was a 14-year-old, who, along with a friend, was attempting to tilt a soft drink machine when the machine toppled and crushed Mark to death.
It is undisputed that approximately one year before Mark's death, Pepsi had been sent by Vendo, through Pepsi U.S.A., free labels warning about the risks of tilting the Vendo machines and detailed information on the installation of anchor brackets to help prevent such tilting. In the materials sent to Pepsi, Vendo had stated:
"There have been several accidents recently, where vending machines have been tipped over, resulting in serious personal injury or death. These accidents have been the result of intentional misuse and abuse of the vending machine involving the tilting, shaking, or rocking of the machine in an effort to obtain free product or the return of coins."
In addition to enclosing free warning labels, Vendo included a postage-paid postcard for ordering more free warning labels.
The warning labels stated: "DO NOT TIP OR ROCK THIS VENDING MACHINE." Below this statement was a drawing of a vending machine depicted as falling toward a human figure. The figure had lightning-like lines coming from its head, as if to indicate distress or pain. Immediately below the drawing was: "TIPPING OR ROCKING MAY CAUSE SERIOUS INJURY OR DEATH."
It is undisputed that Pepsi ignored the Vendo materials and took no action on Vendo's concerns. For example, Pepsi did not attach any of the free labels to its Vendo machines and did not seek to attach any anchor brackets to them.
Pepsi and Vendo argue that, based on public policy grounds, Oden cannot maintain this action because Mark was engaged in illegal activity at the time of his death. They cite Hinkle v. Railway Express Agency, 242 Ala. 374, 6 So.2d 417 (1942).
Hinkle states a rule that would bar a plaintiff from maintaining an action where the plaintiff's claims cannot be established unless the plaintiff relies on proof of an illegal act that the plaintiff participated in: "A person cannot maintain a cause of action if, in order to establish it, he must rely in whole or in part on an illegal or immoral act or transaction to which he is a party." 242 Ala. at 378, 6 So.2d at 417.
Hinkle would apply, for example, where a criminal/plaintiff sues a psychiatrist or psychologist for failing to give adequate treatment, which, the criminal asserts, would have resulted in preventing the crime for which the criminal is being punished. See, e.g., Glazier v. Lee, 171 Mich. App. 216, 429 N.W.2d 857 (1988); Cole v. Taylor, 301 N.W.2d 766 (Iowa 1981). In such an instance, the plaintiff's claim is based on an illegal act in which the plaintiff knowingly participated. The alleged "injury" is the crime itself, so to establish the element of damages, the plaintiff "must rely" on, i.e., must show, the facts of the crime.
As a matter of sound public policy, Hinkle would bar that type of action. Otherwise, the criminal would be allowed to use the courts to be compensated for breaking the law.
In the Hinkle case itself, the plaintiff farmer had accepted delivery of out-of-state plants that did not bear inspection tags. The farmer's acceptance (and the shipper's delivery) was illegal under a statute that made it unlawful to "deliver" such uninspected plants. The farmer's land was quarantined by the State and the plants were destroyed. The farmer sued the defendant shipper of the plants, complaining that the shipper had delivered uninspected plants. The Court held that the farmer's action could not be maintained because the basis of the action was unlawful activity that the farmer had been a part of; to *957 establish his claim, the plaintiff had to show a crime he participated in.
To recap, the rule from Hinkle would bar an action where an essential part of the claim is an illegal act the claimant participated in; where "if, in order to establish" his or her claim, the claimant "must rely in whole or part on an illegal ... act" he or she participated in. (Emphasis added).
Given the language of the Hinkle rule, the operative inquiry under these facts is: "Must" Oden "rely" on Mark's attempted theft of a drink from the Vendo machine, i.e, his attempt to steal, in "establishing" Oden's claims.
It bears emphasis that this inquiry in no way relates to whether Mark's behavior has a bearing on any of the defendants' claims. The question to be asked relates to whether Oden could prove his claims without any reference to why Mark was tilting the Vendo machine.
Clearly, that Mark was tilting the Vendo machine in the hope of stealing some soft drinks has nothing to do with Oden's ability to "establish" his claims; Oden in no way "must rely" on Mark's intentions in tipping the machine to prove his case. Stated differently, why Mark was tilting the machine has no bearing on Oden's ability to prove his claims, although Mark's judgment in tilting the machine may have a bearing on the defendants' contributory negligence claims.
It is apparent that Mark's activity relative to his injury, however strongly I disapprove of his behavior, is not a bar to maintaining this action. Furthermore, however strongly I disapprove of this type of behavior, I am unwilling to weaken the applicability of the Hinkle rule in an effort to mold it to fit this case.
Relying on the language of the Hinkle rule, the majority concludes, without explanation, that 1) the rule applies only to "crimes of moral turpitude" and 2) that the rule applies only where the "injuries incurred are a direct result of an injured party's ... participation in a crime of moral turpitude." 621 So.2d at 955.
I have no idea how the majority arrived at these conclusions, because it does not elaborate, and I can find no support for them. Accordingly, I am at a loss to state much more than that these conclusions bear no relationship to the simple rule stated in Hinkle. The rule states: "A person cannot maintain a cause of action if, in order to establish it, he must rely in whole or part on an illegal or immoral act or transaction to which he is a party." 242 Ala. at 378, 6 So.2d at 417. Note that this is an absolute bar without any limitation to "crimes of moral turpitude" and with no limitation to situations where the claimant's injuries were a "direct result of an injured party's ... participation in a crime of moral turpitude."
The majority's interpretation of the Hinkle rule has the effect of greatly limiting its applicability. For example, the majority nullifies it in the instance of negligence claims, by rendering it a mere restatement of contributory negligence. The majority does so by making Hinkle apply only where the claimant's injuries were a "direct result" of his or her illegal action. The actual language of Hinklethat a lawsuit is barred "if, in order to establish it" the claimant "must rely" on his or her "illegal or immoral act"does not require any proof that the claimant caused his or her own injury. Under Hinkle, a negligence claim cannot be maintained, irrespective of any contributory negligence, "if, in order to establish it, [the claimant] must rely in whole or in part on an illegal or immoral act." Thus, it seems to me that if the majority were concerned "that those who transgress the moral or criminal code shall not receive aid from the judicial branch," 621 So.2d at 955, it would not diminish Hinkle's field of operation by making it applicable only upon a showing that the claimant's injuries were the "direct result" of his or her wrongful behavior.
Similarly, the majority increases the likelihood "that those who transgress the moral or criminal code" will "receive aid from the judicial branch," by limiting the applicability of the rule to "crimes of moral turpitude."
*958 Given how I would resolve the Hinkle issue, I also think the majority should have examined the contributory negligence issue raised by Pepsi. In this regard, the first question that should be addressed is whether Mark was of sufficient maturity that our standards of contributory negligence would apply to his behavior. Pepsi argues that the trial court could have properly found that Mark was of sufficient maturity.
In Fletcher v. Hale, 548 So.2d 135, 138 (Ala.1989), the Court quoted Justice Bloodworth's opinion in King v. South, 352 So.2d 1346, 1347 (Ala.1977):
"It has long been the law in Alabama that a child between the ages of 7 and 14 is prima facie incapable of contributory negligence.
"However, a child between the ages of 7 and 14 years may be shown by evidence to be capable of contributory negligence by showing that he possesses that discretion, intelligence, and sensitivity to danger which the ordinary child, who is 14 years of age, possesses."
(Citations omitted.)
Several factors must be examined in determining the child's level of "discretion, intelligence, and sensitivity to danger":
"(1) the intelligence of the child; (2) the capacity of the child to understand the potential danger of the hazard; (3) the child's actual knowledge of the danger; (4) the child's ability to exercise discretion; (5) the educational level of the child; (6) the maturity of the child; and (7) the age of the child."
Jones v. Power Cleaning Contractors, 551 So.2d 996, 999 (Ala.1989) (citation omitted).
The record offers little information on which to assess these factors. Assuming, arguendo, that the trial court, applying the factors listed above, properly found that Mark was of sufficient maturity to be capable of contributory negligence, then it should have found him contributorily negligent if he "had knowledge of the danger and appreciated the danger under the circumstances and, yet, put himself `in the way of danger.'" Jones, 551 So.2d at 999 (quoting Wilson v. Alabama Power Co., 495 So.2d 48, 49 (Ala.1986)). To be contributorily negligent as a matter of law, Mark "must have acted in [such a manner] that reasonable minds could not disagree as to his negligence." Jones, 551 So.2d at 1000.
Here, conflicting inferences might be reasonably drawn from the evidence on the question whether Mark appreciated the danger of tilting the machine. For example, one might infer from the weight and size of the Vendo machine (over 700 pounds), that Mark must have recognized the danger involved in his actions. At the same time, one might also reasonably infer from Mark's previous success in tipping a similar vending machine that he did not recognize the danger of tilting the Vendo machine.
Was 14-year-old Mark heedless because he did not understand the serious danger involved? If so, he could not have been contributorily negligent. The Court has stated that, to find contributory negligence as a matter of law, "it must be demonstrated that the plaintiff's appreciation of the danger was a conscious appreciation at the moment the incident occurred," and that "[m]ere `heedlessness' is insufficient to warrant a finding of contributory negligence as a matter of law." Empiregas, Inc., of Belle Mina v. Suggs, 567 So.2d 271, 273 (Ala.1990), (quoting Central Alabama Electric Coop. v. Tapley, 546 So.2d 371, 381 (Ala.1989)).
Thus, under these rules, whether Mark was more than merely "heedless" is clearly a question for the jury. "Unless the evidence submitted on a summary judgment motion is wholly without adverse inferences or is free from any doubt, summary judgment must not be entered, but the issues must be submitted to the jury." Gossett v. Twin County Cable TV, Inc., 594 So.2d 635, 640 (Ala.1992).
Finally, as to Oden's AEMLD claims against Pepsi and Vendo, an issue is raised as to whether they were entitled to summary judgments based on the defense of *959 product misuse.[3] See generally, Banner Welders, Inc. v. Knighton, 425 So.2d 441, 448 (Ala.1982) (discussing the defense of product misuse).
This Court has stated that product "misuse" is a use of the product that is not reasonably foreseeable to the defendant. Kelly v. M. Trigg Enterprises, Inc. 605 So.2d 1185 (Ala.1992); Dennis v. American Honda Motor Co., 585 So.2d 1336 (Ala. 1991). The burden of showing misuse is on the defendant. Id.
Vendo's arguments on this issue are apparently based on the incorrect premise that it did not have a burden of proof on its motion for summary judgment as to the misuse defense. Vendo stresses for example, that Oden fails to show "that Vendo [at the time it sold the machines to Pepsi] knew of the possibility of injuries caused by tilting or rocking machines or that stabilizing brackets were even available at the time of manufacture." However, Vendo fails to discuss whether it offered any evidence on these questions.
Pepsi argues that it is "obvious" from the record that Mark was misusing the vending machine, stating that "when the machine is used as intended, the user simply drops his money in the coin drop and a drink is dispensed." Certainly, to do otherwise may be construed as a "misuse" in ordinary parlance. However, the Court examines the legal definition of "misuse," which hinges on foreseeability.
As to foreseeability, the record indicates that Vendo knew that its machines were being tipped and that it advised Pepsi of this fact, as well as of the dangers of tipping. Oden's expert offered testimony that Mark's use was foreseeable (as was, he said, the hazard posed by the vending machine).
Accordingly, I would hold that the defendants were not entitled to a summary judgment on the defense of misuse.[4]
In sum, I would affirm the judgment of the trial court as to Oden's negligence and wantonness claims against Vendo. As to the AEMLD claims against Vendo and Pepsi, and as to the wantonness and negligence claims against Pepsi, I would reverse the judgment of the trial court and remand these claims for trial, because a jury should determine them.
INGRAM, Justice (concurring in the result in part; dissenting in part).
I respectfully dissent from the majority's holding that the summary judgment was proper on the wantonness claim against Pepsi Bottling, and I concur in the result as to the remainder of the opinion.
The majority in this case holds that Oden cannot recover against Pepsi or Vendo because Mark's death was "a direct result of [his] knowing and intentional participation in a crime involving moral turpitude." 621 So.2d at 955. The majority also states that the absolute bar based upon the plaintiff's own criminal activity "promotes the desirable public policy objective of preventing those who knowingly and intentionally engage in an illegal or immoral act involving moral turpitude from imposing liability on others for the consequences of their own behavior" and that "such a rule derives principally not from consideration for the defendant, `but from a desire to see that those who transgress the moral or criminal code shall not receive aid from the judicial branch of government.'" 621 So.2d at 955.
*960 Under the specific facts of this case, I fail to see how allowing Oden to maintain an action for Pepsi's alleged wanton conduct would constitute "aid" to Mark. More importantly, the majority opinion fails to recognize that "punishment of wrongdoers is the dominant social perception of the tort system." Martin A. Kotler, Utility, Autonomy and Motive: A Descriptive Model of the Development of Tort Doctrine, 58 Cinn.L.Rev. 1231, 1233 (1990). In recognition of this purpose, I believe that an exception, discussed in greater detail below, to this doctrine should be made in cases where a person has suffered serious physical injury or has been killed because of another's willful or wanton conduct. I believe that the competing public policy purposes that created the doctrine would be better served by applying other established legal principles on a case-by-case basis as to that class of cases where a person has suffered serious physical injury or has been killed.
The bar against maintaining an action in which the plaintiff was required to prove his own criminal conduct, or the criminal conduct of the one through whom he claims, in order to establish his cause of action arose from two basic legal tenets: (1) a person should not be allowed to profit from his own wrongful conduct; and (2) criminal activity is unforeseeable, and the law should not require a reasonable person, such as the defendant, to prepare for the possibility.
The facts of this case (a 14-year-old boy is crushed to death while trying to steal a few canned drinks) make it obvious that the one who violated the law is not going to "profit" from this action and that the judicial branch of government is certainly not "aiding" him in his criminal conduct. Therefore, the first tenet is not implicated by the facts of this case.
As to the second tenet, criminal activity was considered generally unforeseeable by a "reasonable man"; therefore, the "reasonable man" ordinarily could not prepare to avoid the consequences of another man's criminal acts. However, in other areas of the tort law, when the facts of the case indicate that criminal activity is foreseeable and, indeed, is expected, the "reasonable man" may be required to prepare to avoid the consequences of these criminal acts. For example, this Court has held that a plaintiff injured by a third party's criminal acts may recover from the defendant if the criminal act was foreseeable. See Vines v. Plantation Motor Lodge, 336 So.2d 1338 (Ala.1976).
Also, in the area of premises liability, this second tenet, and the doctrine itself, have been implicitly, though not expressly, abrogated. See Ryals v. United States Steel Corp., 562 So.2d 192 (Ala.1990); Motes v. Matthews, 497 So.2d 1121 (Ala. 1986). The general rule is that an occupier of land owes a duty to trespassers not to recklessly, willfully, or wantonly injure them. Ryals, 562 So.2d at 194; Thompson v. Champion International Corp., 500 So.2d 1048 (Ala.1986). The very idea that an occupier of land could owe a duty to someone unlawfully upon his land seems to crack the absolute bar the doctrine supports. Looking at the scope of the duty a landowner owes to a trespasser, one sees that the levels of culpable conductwantonness and wilfulnesssubsume two distinct characteristics of the occupier's conduct: (1) that he possessed a level of certitude or actual knowledge about the trespasser's presence, albeit an unlawful presence, and the trespasser's potential or actual peril (more than simple foreseeability); and (2) that he consciously disregarded the trespasser's peril and/or actually intended to harm the trespasser (deliberate conduct intended or expected to result in injury). For example, this Court has held that the occupier's liability to a trespasser for injuries incurred as a result of a trap or a pitfall is rested upon the theory that the occupier was expecting the trespasser and formulated some method by which to harm him. Moseley v. Alabama Power Co., 246 Ala. 416, 419, 21 So.2d 305 (1945) ("[T]hat the owner has expected the trespasser and prepared an injury is no more justified than if he had held a gun and fired it."). The duty a landowner owes a trespasser *961 also makes special exceptions for children[5] and allows recovery by an adult trespasser who has been injured while committing a crime on the property.[6]
In this case, Oden presented substantial evidence that Pepsi knew that the vending machines were being tipped for the purpose of stealing drinks; that Pepsi also knew that such criminal activity had resulted in serious injuries and death; that Vendo offered to send Pepsi, free of charge, labels warning of the danger of tipping the vending machines; that Vendo also offered to send Pepsi, at cost, anchors to secure the vending machines and prevent their tipping; and that Pepsi refused to take any action to forestall the known dangers created by the vending machines. If a jury finds these things to be the facts, then Pepsi should not go unpunished for its wanton disregard of the danger posed by its vending machines.
For this reason, I would create an exception to the absolute bar in cases where (1) the plaintiff can show that the defendant expected or knew that the plaintiff would engage in such criminal activity even at the risk of serious physical injury or death i.e., where criminal conduct was more than merely foreseeableand (2) the plaintiff can show that the defendant acted wilfully or wantonly in injuring the plaintiffi.e., where the defendant deliberately acted, or deliberately failed to act, with knowledge that such action or inaction was likely to result, or would result, in death or serious injury to the plaintiff. In cases that would fall within my proposed exception, the ultimate liability of the defendant would be determined based upon an application of established principles of law to the facts of each case. Such a system would protect the public policies behind the absolute bar without allowing one who acts wantonly or wilfully to injure another to "profit" from such action merely because his action or failure to act injured someone who was tipping his machine to steal drinks, instead of one who was attempting to retrieve lost coins or a drink can that was stuck in the machine.
For the above-stated reasons, I respectfully dissent from the affirmance of the summary judgment in favor of Pepsi on the wantonness claim; I concur in the result as to the affirmance of the judgment as to the remaining claims against Pepsi and as to all claims against Vendo.
NOTES
[1] Section 6-5-391, Ala.Code 1975, contemplates that in an action alleging the wrongful death of a minor the parent will sue as the parent. However, Mr. Oden's right to sue is not affected by the fact that he sued instead as administrator of his minor son's estate. See, e.g., Benson v. Robinson, 223 Ala. 85, 134 So. 799 (1931); McWhorter Transfer Co. v. Peek, 232 Ala. 143, 167 So. 291 (1936); and Daniel Constr. Co. v. Pierce, 270 Ala. 522, 120 So.2d 381 (1959).
[2] In Ryals v. United States Steel Corp., 562 So.2d 192 (Ala.1990), we held that the duty owed by a landowner to an adult trespasser who enters the premises to engage in theft is different from the ordinary duty owed by a landowner to a trespasser. The landowner's duty to one who trespasses with intent to steal is a duty to refrain from intentionally injuring him. Id. at 194.
[3] Vendo also argues that it was entitled to a summary judgment on Oden's AEMLD claim because one element of an AEMLD claim is a showing that the defendant produced an unreasonably dangerous product and, Vendo says, Oden produced no evidence on that element. This argument is without merit, given testimony by Oden's expert indicating that the machine was defective and unreasonably dangerous, and thus, in the interest of brevity, I do not extensively discuss this contention.

For a discussion of the elements of an AEMLD claim as established in Casrell v. Altec Indus., Inc., 335 So.2d 128, 132-33 (Ala.1976), and in Atkins v. American Motors Corp., 335 So.2d 134, 141 (Ala.1976), see Yamaha Motor Co. v. Thornton, 579 So.2d 619, 621 (Ala.1991).
[4] Also, discussion of Vendo's argument that it was entitled to a judgment because Mark, as a person who "used" the machine by tipping it, was not a foreseeable plaintiff, is effectively pretermitted.
[5] A possessor of land owes a duty to exercise reasonable care to eliminate an artificial condition on land that poses a danger to children. Fletcher v. Hale, 548 So.2d 135 (Ala.1989); Lyle v. Bouler, 547 So.2d 506 (Ala.1989).
[6] Ryals v. United States Steel Corp., 562 So.2d at 194, states that "the duty owed by a landowner to an adult trespasser who comes upon the land and is injured while committing a crime is the duty not tointentionally injure such a trespasser." The Court added a caveat that this statement of duty did not affect the "no duty" rule the rule that a landowner owes no duty to a trespasser attempting to enter an occupied dwelling with the purpose of committing a crime therein or inflicting bodily injury on an occupant of the dwelling. Id. at n. 3.