Although I disagree with its reasoning, I agree with the majority that Vendo was *Page 956 
entitled to a judgment on Oden's negligence and wantonness claims. As to all other claims raised I respectfully dissent.
In the interest of brevity, I address my comments only to the resolution of those claims from which I dissent, the AEMLD claims against Vendo and Pepsi and the negligence and wantonness claims against Pepsi.
Mark Oden was a 14-year-old, who, along with a friend, was attempting to tilt a soft drink machine when the machine toppled and crushed Mark to death.
It is undisputed that approximately one year before Mark's death, Pepsi had been sent by Vendo, through Pepsi U.S.A., free labels warning about the risks of tilting the Vendo machines and detailed information on the installation of anchor brackets to help prevent such tilting. In the materials sent to Pepsi, Vendo had stated:
 "There have been several accidents recently, where vending machines have been tipped over, resulting in serious personal injury or death. These accidents have been the result of intentional misuse and abuse of the vending machine involving the tilting, shaking, or rocking of the machine in an effort to obtain free product or the return of coins."
In addition to enclosing free warning labels, Vendo included a postage-paid postcard for ordering more free warning labels.
The warning labels stated: "DO NOT TIP OR ROCK THIS VENDING MACHINE." Below this statement was a drawing of a vending machine depicted as falling toward a human figure. The figure had lightning-like lines coming from its head, as if to indicate distress or pain. Immediately below the drawing was: "TIPPING OR ROCKING MAY CAUSE SERIOUS INJURY OR DEATH."
It is undisputed that Pepsi ignored the Vendo materials and took no action on Vendo's concerns. For example, Pepsi did not attach any of the free labels to its Vendo machines and did not seek to attach any anchor brackets to them.
Pepsi and Vendo argue that, based on public policy grounds, Oden cannot maintain this action because Mark was engaged in illegal activity at the time of his death. They cite Hinkle v.Railway Express Agency, 242 Ala. 374, 6 So.2d 417 (1942).
Hinkle states a rule that would bar a plaintiff from maintaining an action where the plaintiff's claims cannot be established unless the plaintiff relies on proof of an illegal act that the plaintiff participated in: "A person cannot maintain a cause of action if, in order to establish it, he must rely in whole or in part on an illegal or immoral act or transaction to which he is a party." 242 Ala. at 378,6 So.2d at 417.
Hinkle would apply, for example, where a criminal/plaintiff sues a psychiatrist or psychologist for failing to give adequate treatment, which, the criminal asserts, would have resulted in preventing the crime for which the criminal is being punished. See, e.g., Glazier v. Lee, 171 Mich. App. 216,429 N.W.2d 857 (1988); Cole v. Taylor, 301 N.W.2d 766 (Iowa 1981). In such an instance, the plaintiff's claim is based on an illegal act in which the plaintiff knowingly participated. The alleged "injury" is the crime itself, so to establish the element of damages, the plaintiff "must rely" on, i.e., must show, the facts of the crime.
As a matter of sound public policy, Hinkle would bar that type of action. Otherwise, the criminal would be allowed to use the courts to be compensated for breaking the law.
In the Hinkle case itself, the plaintiff farmer had accepted delivery of out-of-state plants that did not bear inspection tags. The farmer's acceptance (and the shipper's delivery) was illegal under a statute that made it unlawful to "deliver" such uninspected plants. The farmer's land was quarantined by the State and the plants were destroyed. The farmer sued the defendant shipper of the plants, complaining that the shipper had delivered uninspected plants. The Court held that the farmer's action could not be maintained because the basis of the action was unlawful activity that the farmer had been a part of; to *Page 957 
establish his claim, the plaintiff had to show a crime he participated in.
To recap, the rule from Hinkle would bar an action where an essential part of the claim is an illegal act the claimant participated in; where "if, in order to establish" his or her claim, the claimant "must rely in whole or part on an illegal . . . act" he or she participated in. (Emphasis added).
Given the language of the Hinkle rule, the operative inquiry under these facts is: "Must" Oden "rely" on Mark's attempted theft of a drink from the Vendo machine, i.e, his attempt to steal, in "establishing" Oden's claims.
It bears emphasis that this inquiry in no way relates to whether Mark's behavior has a bearing on any of thedefendants' claims. The question to be asked relates to whetherOden could prove his claims without any reference to why Mark was tilting the Vendo machine.
Clearly, that Mark was tilting the Vendo machine in the hope of stealing some soft drinks has nothing to do with Oden's ability to "establish" his claims; Oden in no way "must rely" on Mark's intentions in tipping the machine to prove his case. Stated differently, why Mark was tilting the machine has no bearing on Oden's ability to prove his claims, although Mark's judgment in tilting the machine may have a bearing on thedefendants' contributory negligence claims.
It is apparent that Mark's activity relative to his injury, however strongly I disapprove of his behavior, is not a bar to maintaining this action. Furthermore, however strongly I disapprove of this type of behavior, I am unwilling to weaken the applicability of the Hinkle rule in an effort to mold it to fit this case.
Relying on the language of the Hinkle rule, the majority concludes, without explanation, that 1) the rule applies only to "crimes of moral turpitude" and 2) that the rule applies only where the "injuries incurred are a direct result of an injured party's . . . participation in a crime of moral turpitude." 621 So.2d at 955.
I have no idea how the majority arrived at these conclusions, because it does not elaborate, and I can find no support for them. Accordingly, I am at a loss to state much more than that these conclusions bear no relationship to the simple rule stated in Hinkle. The rule states: "A person cannot maintain a cause of action if, in order to establish it, he must rely in whole or part on an illegal or immoral act or transaction to which he is a party." 242 Ala. at 378, 6 So.2d at 417. Note that this is an absolute bar without any limitation to "crimes of moral turpitude" and with no limitation to situations where the claimant's injuries were a "direct result of an injured party's . . . participation in a crime of moral turpitude."
The majority's interpretation of the Hinkle rule has the effect of greatly limiting its applicability. For example, the majority nullifies it in the instance of negligence claims, by rendering it a mere restatement of contributory negligence. The majority does so by making Hinkle apply only where the claimant's injuries were a "direct result" of his or her illegal action. The actual language of Hinkle — that a lawsuit is barred "if, in order to establish it" the claimant "must rely" on his or her "illegal or immoral act" — does notrequire any proof that the claimant caused his or her owninjury. Under Hinkle, a negligence claim cannot be maintained, irrespective of any contributory negligence, "if, in order to establish it, [the claimant] must rely in whole or in part on an illegal or immoral act." Thus, it seems to me that if the majority were concerned "that those who transgress the moral or criminal code shall not receive aid from the judicial branch," 621 So.2d at 955, it would not diminish Hinkle's field of operation by making it applicable only upon a showing that the claimant's injuries were the "direct result" of his or her wrongful behavior.
Similarly, the majority increases the likelihood "that those who transgress the moral or criminal code" will "receive aid from the judicial branch," by limiting the applicability of the rule to "crimes of moral turpitude." *Page 958 
Given how I would resolve the Hinkle issue, I also think the majority should have examined the contributory negligence issue raised by Pepsi. In this regard, the first question that should be addressed is whether Mark was of sufficient maturity that our standards of contributory negligence would apply to his behavior. Pepsi argues that the trial court could have properly found that Mark was of sufficient maturity.
In Fletcher v. Hale, 548 So.2d 135, 138 (Ala. 1989), the Court quoted Justice Bloodworth's opinion in King v. South,352 So.2d 1346, 1347 (Ala. 1977):
 "It has long been the law in Alabama that a child between the ages of 7 and 14 is prima facie incapable of contributory negligence.
 "However, a child between the ages of 7 and 14 years may be shown by evidence to be capable of contributory negligence by showing that he possesses that discretion, intelligence, and sensitivity to danger which the ordinary child, who is 14 years of age, possesses."
(Citations omitted.)
Several factors must be examined in determining the child's level of "discretion, intelligence, and sensitivity to danger":
 "(1) the intelligence of the child; (2) the capacity of the child to understand the potential danger of the hazard; (3) the child's actual knowledge of the danger; (4) the child's ability to exercise discretion; (5) the educational level of the child; (6) the maturity of the child; and (7) the age of the child."
Jones v. Power Cleaning Contractors, 551 So.2d 996, 999 (Ala. 1989) (citation omitted).
The record offers little information on which to assess these factors. Assuming, arguendo, that the trial court, applying the factors listed above, properly found that Mark was of sufficient maturity to be capable of contributory negligence, then it should have found him contributorily negligent if he "had knowledge of the danger and appreciated the danger under the circumstances and, yet, put himself 'in the way of danger.' " Jones, 551 So.2d at 999 (quoting Wilson v. Alabama Power Co.,495 So.2d 48, 49 (Ala. 1986)). To be contributorily negligent as a matter of law, Mark "must have acted in [such a manner] that reasonable minds could not disagree as to his negligence."Jones, 551 So.2d at 1000.
Here, conflicting inferences might be reasonably drawn from the evidence on the question whether Mark appreciated the danger of tilting the machine. For example, one might infer from the weight and size of the Vendo machine (over 700 pounds), that Mark must have recognized the danger involved in his actions. At the same time, one might also reasonably infer from Mark's previous success in tipping a similar vending machine that he did not recognize the danger of tilting the Vendo machine.
Was 14-year-old Mark heedless because he did not understand
the serious danger involved? If so, he could not have been contributorily negligent. The Court has stated that, to find contributory negligence as a matter of law, "it must be demonstrated that the plaintiff's appreciation of the danger was a conscious appreciation at the moment the incident occurred," and that "[m]ere 'heedlessness' is insufficient to warrant a finding of contributory negligence as a matter of law." Empiregas, Inc., of Belle Mina v. Suggs, 567 So.2d 271,273 (Ala. 1990), (quoting Central Alabama Electric Coop. v.Tapley, 546 So.2d 371, 381 (Ala. 1989)).
Thus, under these rules, whether Mark was more than merely "heedless" is clearly a question for the jury. "Unless the evidence submitted on a summary judgment motion is wholly without adverse inferences or is free from any doubt, summary judgment must not be entered, but the issues must be submitted to the jury." Gossett v. Twin County Cable TV, Inc.,594 So.2d 635, 640 (Ala. 1992).
Finally, as to Oden's AEMLD claims against Pepsi and Vendo, an issue is raised as to whether they were entitled to summary judgments based on the defense of *Page 959 
product misuse.[3] See generally, Banner Welders, Inc. v.Knighton, 425 So.2d 441, 448 (Ala. 1982) (discussing the defense of product misuse).
This Court has stated that product "misuse" is a use of the product that is not reasonably foreseeable to the defendant.Kelly v. M. Trigg Enterprises, Inc. 605 So.2d 1185 (Ala. 1992);Dennis v. American Honda Motor Co., 585 So.2d 1336 (Ala. 1991). The burden of showing misuse is on the defendant. Id.
Vendo's arguments on this issue are apparently based on the incorrect premise that it did not have a burden of proof on its motion for summary judgment as to the misuse defense. Vendo stresses for example, that Oden fails to show "that Vendo [at the time it sold the machines to Pepsi] knew of the possibility of injuries caused by tilting or rocking machines or that stabilizing brackets were even available at the time of manufacture." However, Vendo fails to discuss whether it
offered any evidence on these questions.
Pepsi argues that it is "obvious" from the record that Mark was misusing the vending machine, stating that "when the machine is used as intended, the user simply drops his money in the coin drop and a drink is dispensed." Certainly, to do otherwise may be construed as a "misuse" in ordinary parlance. However, the Court examines the legal definition of "misuse," which hinges on foreseeability.
As to foreseeability, the record indicates that Vendo knew that its machines were being tipped and that it advised Pepsi of this fact, as well as of the dangers of tipping. Oden's expert offered testimony that Mark's use was foreseeable (as was, he said, the hazard posed by the vending machine).
Accordingly, I would hold that the defendants were not entitled to a summary judgment on the defense of misuse.[4]
In sum, I would affirm the judgment of the trial court as to Oden's negligence and wantonness claims against Vendo. As to the AEMLD claims against Vendo and Pepsi, and as to the wantonness and negligence claims against Pepsi, I would reverse the judgment of the trial court and remand these claims for trial, because a jury should determine them.
[3] Vendo also argues that it was entitled to a summary judgment on Oden's AEMLD claim because one element of an AEMLD claim is a showing that the defendant produced an unreasonably dangerous product and, Vendo says, Oden produced no evidence on that element. This argument is without merit, given testimony by Oden's expert indicating that the machine was defective and unreasonably dangerous, and thus, in the interest of brevity, I do not extensively discuss this contention.
For a discussion of the elements of an AEMLD claim as established in Casrell v. Altec Indus., Inc., 335 So.2d 128,132-33 (Ala. 1976), and in Atkins v. American Motors Corp.,335 So.2d 134, 141 (Ala. 1976), see Yamaha Motor Co. v. Thornton,579 So.2d 619, 621 (Ala. 1991).
[4] Also, discussion of Vendo's argument that it was entitled to a judgment because Mark, as a person who "used" the machine by tipping it, was not a foreseeable plaintiff, is effectively pretermitted.