National Union Fire Insurance Company appeals from a summary judgment entered in favor of appellees, Lomax Johnson Insurance Agency, Inc. (Johnson Agency) and Lomax Johnson, individually.[1]
National Union sought a declaration of the coverage provided under an insurance policy it had written. The policy is an "Insurance Agents' and Brokers' Professional Liability" contract, commonly known as an "errors and omissions" policy. Johnson Agency and Lomax Johnson are the named insureds.
Under the policy National Union agreed to pay on behalf of the insured
 "all sums which the insured shall become legally obligated to pay on account of any claim first made against the insured and reported to the company during the policy period, caused by any negligent act, error or omission of the insured or any other person for whose acts the insured is legally liable in the conduct of [its] business as General Agents, Insurance Agents or Insurance Brokers, Insurance Consultants, or Notary Public."
There were certain conditions and exclusions from coverage listed in the insuring agreements section of the policy.
The issues are whether appellees complied with the conditions of the policy and whether no exclusion applied, so that National Union became liable under the terms of the policy due to an error committed by an employee of Johnson Agency.
The case arose from a company account handled by Malcolm Dunaway. Dunaway had been employed by the Johnson Agency for many years. He held the title of vice-president of the company and was responsible for servicing the Carter Pulpwood Timber Company account.
In February of 1980, the underwriter of Carter Pulpwood's workmen's compensation policy cancelled its coverage effective August 1980. Dunaway was notified of this cancellation and made efforts to find replacement coverage. A carrier was finally secured in March of 1981 by another employee of Johnson Agency. Meanwhile, a number of Carter Pulpwood employees experienced work-related injuries and filed claims.
Initially Dunaway paid these claims out of his own funds and the unused premium payments made by Carter Pulpwood to Johnson Agency. Ultimately, Dunaway was presented with a claim that he was unable to pay. The claimant, Jim W. Kennedy, sued his employer, Carter Pulpwood. This action led Johnson to discover, in July of 1983, Dunaway's failure to provide insurance. Throughout, Dunaway had concealed from Johnson Agency and Johnson his failure to provide coverage. Within a few days of learning of Dunaway's failure to provide coverage, Johnson notified National Union.
National Union contends that its policy does not provide coverage in this case because of a failure to meet the requirements of the notice provision of the policy and because the claim falls within one of the policy's exclusions.
National Union does not suggest that the actions or inactions of Dunaway in failing to secure coverage for Carter Pulpwood were anything other than mere negligence. Apparently his negligent act constitutes the type of "error or omission" that the policy is designed to cover.
National Union first argues that there was a failure to give proper notice of a potential claim. The relevant provision of the errors and omissions policy reads:
 "Upon the insured becoming aware of any act, error or omission which could reasonably be expected to be the basis of a claim or suit covered hereby, written *Page 739 
notice shall be given by or on behalf of the insured to the Company."
National Union argues that Dunaway had notice of a potential claim in June 1980. It is National Union's position that, since Dunaway was an employee of Johnson Agency, Johnson Agency should be deemed to have had notice of a potential claim in June of 1980. We disagree.
Whether notice to the agent constitutes notice to the principal depends upon the relationships of the parties. In the law of contracts, the rule of constructive notice is said to arise from the duty that the agent has to make disclosures to his principal. However, this is not a hard and fast rule. Where the facts do not warrant an expectation that the agent will make a disclosure to the principal, the justification for the rule does not arise and the rule does not apply. It may be further observed that the justification for applying the rule does not extend beyond the principal-agent-third party relationship that gives rise to the operation of the rule in a particular case.
We find no justification for applying the rule of constructive notice in the manner National Union would have us apply it. The very nature of the acts to which the errors or omissions policy is directed is such that it may be expected that one who has committed such acts will seek to avoid, rather than advance, the discovery of the error by others. That is exactly what Dunaway did. It is not reasonable to expect the unexpected and it is not reasonable to hold a party to a course of conduct where such conduct is not to be expected. This same rationale was applied in a similar factual setting by the court in American Financial Corp. v. Fireman's Fund Ins. Co., 15 Ohio St.2d 171, 239 N.E.2d 33 (1968). That court held that the doctrine of imputed knowledge was not applicable.
When we consider the principle of privity of contract we find additional support for this position. To illustrate: Suppose the workmen's compensation policy under which Kennedy should have been covered required that the claimant notify Johnson Agency of a claim. Kennedy would be a third party beneficiary of the insurance contract between Carter Pulpwood and Johnson Agency. He would have standing to enforce the contract. The relationships of the parties clearly justify imputing to Johnson Agency the notice of his claim, which Kennedy gave to Dunaway, to the end that the condition precedent has been satisfied. The justification for this implied notice rests entirely on the relationships of these particular parties.
Enter National Union. It points to this relationship, to which it is not in privity, and seeks to apply the same implied notice to defeat the condition precedent to recovery under the policy it issued. Now we are no longer able to identify the justification which existed when Kennedy asserted the rule in the hypothetical. Constructive notice simply does not apply to National Union.
The facts show that Lomax Johnson notified National Union within a week of his learning that there were potential claims arising under the policy. The lower court was correct in finding that there was no issue as to whether Lomax Johnson gave timely notice to National Union.
National Union next argues that coverage is barred under the "dishonest and criminal acts" exclusion of the policy. The "Exclusions" section of the contract provides, "This policy does not apply:
 "(a) To any claim arising out of any dishonest, criminal, or malicious act, error or omission of any Insured, provided however, that the act of an unlicensed employee shall not invalidate the insurance afforded hereunder to any Insured unless committed jointly by or with the knowledge of an Insured."
National Union cites Code 1975, §§ 27-1-12, 27-3-1, and27-12-17, contending that Johnson Agency criminally violated these statutes. These statutes deal with regulation and licensing of insurance companies. *Page 740 
A maximum one year and $1,000 fine is established for violation of the regulations. Section 27-12-17 (a) prohibits a person from "willfully collect[ing] any sum as premium or charge for insurance which insurance is not then provided or is not in due course to be provided."
The facts show that Carter Pulpwood had been purchasing its insurance through Johnson Agency for a number of years. Though there was a lapse in coverage following the February 1980 cancellation, there was an ongoing effort to place the workmen's compensation insurance and this was eventually accomplished. There is no indication that the premiums collected by Johnson agency were not for insurance "then provided or . . . in due course to be provided." We find nothing in these facts suggesting criminal activity.
National Union also argues that coverage is barred as a result of Dunaway's having lied to Clint Carter of Carter Pulpwood. Donald Browne, the regional claims manager for National Union, admitted in deposition that National Union had no evidence that Dunaway had a dishonest intent in handling the Carter Pulpwood account. Therefore, the trial court did not err in granting judgment on this ground.
The fourth and last argument which National Union makes is that Johnson Agency is liable for the acts of Dunaway because he was the general agent and corporate officer of Johnson Agency.
Our response to this argument is basically the same as our response to the first issue. National Union cites a number of cases in support of the proposition that the principal is liable for the acts of the agent done in the line and scope of his authority. The cases which National Union cites are tort cases. Principles of tort liability whereby a principal is held liable for the negligent acts of his agent cannot serve here to prevent coverage where the very thing insured against was the negligent acts of the insured's agents.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
MADDOX, JONES, SHORES, ADAMS and HOUSTON, JJ., concur.
[1] Various other parties were named as appellees in the notice of appeal and one has filed an appellee's brief. The only issues regard the coverage vel non of Johnson and the Johnson Agency under National Union's policy. Therefore we shall refer to Johnson and the Johnson Agency as appellees.