620 So.2d 591 (1993)
Thomas D. TODD
v.
MODERN WOODMEN OF AMERICA.
Thomas D. TODD
v.
Jimmy Douglas CHAMBERS, et al.
1910497, 1911348.
Supreme Court of Alabama.
April 16, 1993.
James P. O'Neal of Gaiser and O'Neal, Birmingham, for appellant.
Ollie L. Blan, Jr. and W. Gregory Smith of Spain, Gillon, Grooms, Blan & Nettles, Birmingham, for appellees.
PER CURIAM.
The plaintiff, Thomas D. Todd, appeals from a summary judgment in favor of the defendant Modern Woodmen of America, made final pursuant to Rule 54(b), Ala. R.Civ.P. Todd also appeals from the denial *592 of his Rule 60(b) motion that was filed during the pendency of the first appeal.
Todd brought an action against Modern Woodmen, a life insurance society, and its agent, Jimmy Chambers, for losses incurred in connection with the sale of fraudulent investment contracts by Chambers to Todd.[1] The complaint set forth four counts, alleging breach of contract, violation of the Securities Act of Alabama, violation of the Alabama Trade Practices Law, and fraud. The primary issues here are: 1) whether the trial court erred in holding that Todd failed to present substantial evidence that Chambers had authority to bind Modern Woodmen to the fraudulent investment contracts; and 2) whether the trial court erred in holding that Todd failed to present substantial evidence that Modern Woodmen could be held liable in tort for Chambers's acts.
The standard of review applicable to a summary judgment is the "substantial evidence" rule. Under this rule, once the movant has shown, prima facie, that there is no genuine issue as to any material fact and that he is entitled to a judgment as a matter of law, the nonmovant must introduce "substantial evidence" to rebut this showing. "Substantial evidence" has been defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co., 547 So.2d 870, 871 (Ala. 1989); Ala.Code 1975, § 12-21-12(c).
The evidence in the record before us is limited to certain documentary evidence and the affidavits of the plaintiff Todd and J.V. Standaert, the national secretary of Modern Woodmen; these documents and affidavits were submitted by the parties in support of their positions on Modern Woodmen's motion for summary judgment. Although Modern Woodmen took Todd's deposition and relied on that deposition in its brief in support of its motion for summary judgment and in oral argument on the motion, that deposition was not filed with the trial court. Modern Woodmen filed a motion to supplement the record on appeal with Todd's deposition, but the trial court denied that motion. Therefore, the deposition is not before us for review.
The facts, as recited in Todd's affidavit, are as follows:
"In March of 1990 I met defendant, Jimmy Chambers. To my knowledge, I had never previously met Mr. Chambers and was not aware of his existence prior to our meeting. At the time we met, Mr. Chambers informed me that he was an agent for defendant, Modern Woodmen of America. Attached hereto as Exhibit `1' is a copy of Mr. Chambers's business card identifying him as `District Manager' of Modern Woodmen. We did not transact any business during our first meeting, although Mr. Chambers did describe an investment opportunity which Modern Woodmen was offering at the time.
"I was familiar with the name Modern Woodmen as one of my children had previously won an award at school which was sponsored by the company.
"Following this initial meeting, I met with Mr. Chambers on March 26, 1990 at the Modern Woodmen office on Rainbow Drive in Gadsden, Alabama. The office was clearly identified by exterior signage as being the office of Defendant, Modern Woodmen of America and there appeared to be a number of employees in addition to Mr. Chambers present in the office. During my meeting with Mr. Chambers we sat at his desk which was clearly visible to other Modern Woodmen employees in the office. At this meeting in the Modern Woodmen office, I purchased a policy of Modern Woodmen Life Insurance, a copy of which is attached hereto as exhibit `2', and a `drop-in' contract which I believed to be a Modern Woodmen product, a copy of which is attached hereto as Exhibit `3.' I obtained from Mr. Chambers a copy of his insurance license clearly reflecting the fact that he was employed by Modern Woodmen of *593 America, a copy of which is attached hereto as Exhibit `4.'
"This purchase of the life insurance and the `drop-in' was consummated in the office of Modern Woodmen within clear sight, view and hearing of any persons who may have been present in the Modern Woodmen office at that time. Several days later I purchased a second `drop-in' contract. Again, allegedly issued by Modern Woodmen of America, a copy of which is attached hereto as Exhibit `5.'
"At the time I purchased the `drop-in' contracts I was informed that I had to be a Modern Woodmen policyholder in order to be eligible to purchase the `drop-ins.' Accordingly, I purchased the Modern Woodmen policy identified on Exhibit `2.'
"At all times and in all respects in my dealings with Mr. Chambers as discussed herein I believed he was acting on behalf of Modern Woodmen and in view of the circumstances described herein I believe I had every right to that belief. At no time would I have ever had any personal financial dealings with Mr. Chambers in his individual capacity and I only dealt with him in his capacity as a representative of Modern Woodmen of America."
Standaert stated in his affidavit, inter alia, that Modern Woodmen did not sell "drop-in" contracts, had not authorized Chambers to do so, did not receive any proceeds or benefits from the sale of the "drop-in" contracts, and did not know of or consent to Chambers's sales of "drop-in" contracts. Each of the "drop-in" contracts in the record shows that Todd gave Chambers $12,000 and was promised payments of $650 per month plus a return of the $12,000 at the end of the year. After receiving a single monthly payment on the "drop-in" contracts from Chambers in cash, Todd received no more monthly payments. Todd cancelled the life insurance policy and brought this action against Modern Woodmen and Chambers.
Todd argues that a jury question was presented on the issue of whether Chambers had authority to bind Modern Woodmen in contract when he sold the "drop-ins" to Todd. The court properly entered the summary judgment on the contract claim, however, because the evidence indicates that Chambers was authorized only to sell insurance policies and to collect premiums for those policies on behalf of Modern Woodmen, and Todd did not offer any pertinent evidence to the contrary. An insurance agent possessing only this type of authority is classified as a "soliciting agent." Our cases are clear that a soliciting agent has no power to bind the principal in contract. Land & Associates, Inc. v. Simmons, 562 So.2d 140 (Ala.1989), cert. denied, ___ U.S. ___, 111 S.Ct. 1305, 113 L.Ed.2d 240 (1991); Washington National Insurance Co. v. Strickland, 491 So.2d 872 (Ala.1985); Watson v. Prudential Insurance Co., 399 So.2d 285 (Ala.1981). Therefore, Chambers had no authority to bind Modern Woodmen to the "drop-in" contracts, and the judgment for Modern Woodmen on the contract claim is affirmed.
The fact that Chambers is only a soliciting agent does not, however, automatically render Modern Woodmen immune from liability for Chambers's intentional torts. This Court, in Joyner v. AAA Cooper Transportation, 477 So.2d 364 (Ala. 1985), enunciated a three-part test for determining when a principal is to be held liable for the intentional torts of its agents. We stated:
"For [the principal] to become liable for the alleged intentional torts of its agent, the plaintiffs must offer evidence that the agent's wrongful acts were [1] in the line and scope of his employment [citations omitted]; or [2] that the acts were in furtherance of the business of [the principal] [citations omitted]; or [3] that [the principal] participated in, authorized, or ratified the wrongful acts [citations omitted]."
477 So.2d at 365.
The evidence that Chambers was not authorized to sell investments such as the "drop-in" contract would support a holding that it was outside the line and scope of his employment to do so. Solmica of the Gulf Coast, Inc. v. Braggs, 285 Ala. 396, 232 So.2d 638 (1970). Todd has, however, presented substantial evidence to *594 satisfy the second part of the Joyner test, that the actions of Chambers were in furtherance of the business of Modern Woodmen. In his affidavit, Todd states that Chambers required him to purchase a Modern Woodmen life insurance policy to be eligible to purchase the "drop-in" contracts. Nothing in the record controverts this assertion. Thus, a jury could infer that Chambers was using the "drop-in" contracts to sell life insurance policies for Modern Woodmen. Under such a view of the transaction, a jury could find that the actions of Chambers furthered the business of Modern Woodmen. Therefore, the judgment of the trial court with respect to the fraud claim is due to be reversed.
As to count one, the contract count, the judgment is affirmed. The second count, seeking damages under the Securities Act of Alabama, Ala.Code 1975, § 8-6-1 et seq., premises Modern Woodmen's liability on Chambers's authority to sell drop-in contracts. Because he had no such authority, the judgment for Modern Woodmen is also affirmed as to count two. The third count, under the Trade Practices Law, Ala.Code 1975, § 27-12-1 et seq., is essentially similar to a fraud claim, see Guinn v. American Integrity Ins. Co., 568 So.2d 760 (Ala. 1990). However, some sections of that Law, e.g., § 27-12-10, might support a cause of action different from the fraud claim, but imposing liability on statutory grounds or on the "furtherance of business" principle applicable to the fraud claim. We express no opinion as to these matters except to say that the question was not sufficiently developed to support a summary judgment for Modern Woodmen on this count. The judgment is therefore reversed as to count three. As to count four, alleging fraud, the judgment is reversed for the reasons stated above.
The appeal from the denial of the Rule 60(b) motion is mooted by our reversal on the primary appeal. The second appeal is therefore dismissed.
1910497AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
1911348APPEAL DISMISSED.
HORNSBY, C.J., and MADDOX, SHORES, STEAGALL and INGRAM, JJ., concur.
HOUSTON, J., concurs specially.
HOUSTON, Justice (concurring specially).
Again we deal with the law of agency and the doctrine of respondeat superior. I had this problem when I authored Washington National Insurance Co. v. Strickland, 491 So.2d 872 (Ala.1985). I distinguished these to my satisfaction in Washington National. Relying on Washington National, I would affirm the trial court's judgment as to the contract claim, but I would reverse and remand as to the fraud claim.
There was substantial evidence that Chambers was a soliciting agent of Modern Woodmen of America. If the trier of fact finds that Chambers was a soliciting agent rather than an independent contractor, then Modern Woodmen of America's liability, if any, would be vicarious and it could be liable for Todd's fraud even if it did not participate in the fraud or even if it forbade the fraud. I need only to read Todd's affidavit to find substantial evidence that Chambers was soliciting insurance for Modern Woodmen of America when he sold the "drop ins" to Todd:
"At the time I purchased the `drop-in' contracts I was informed that I had to be a Modern Woodmen policyholder in order to be eligible to purchase the `drop-ins.' Accordingly, I purchased the Modern Woodmen policy identified on Exhibit 2."
NOTES
[1] The fraudulent nature of the investment contracts is not at issue here; Chambers pleaded guilty to criminal charges arising out of these transactions.