MAIN, Justice.
Wade Tucker and Wendell Cook Testamentary Trust, on behalf of shareholders of HealthSouth Corporation (hereinafter referred to collectively as “HealthSouth”), brought this shareholder-derivative action against Ernst & Young, LLP (“E & Y”), asserting claims of “audit malpractice” based on E & Y’s failure to discover and, if discovered, to report accounting fraud. The “audit malpractice” claims included various claims of negligence, breach of contract, and fraud.[1] The action was referred to arbitration, and an arbitration award was entered in favor of E & Y. HealthSouth filed a motion in the Jefferson Circuit Court seeking to vacate the award. The circuit court denied the motion to vacate and entered a final judgment in favor of E ■ & Y based on the award. HealthSouth appeals. We affirm.
*1266 I. Facts and Procedural Background
This action began as a shareholder-derivative action brought on behalf of HealthSouth Corporation by shareholders Wade Tucker and Wendell Cook Testamentary Trust, John P. Cook, trustee. It arises from accounting fraud at Health-South Corporation, which took place during the late 1990s and early 2000s. As a result of that accounting fraud, Health-South Corporation’s earnings were falsely inflated by more than $2.6 billion; numerous HealthSouth Corporation officers, directors, and managerial employees were convicted of federal crimes for their roles in the fraud; and, upon discovery of the fraud, HealthSouth Corporation purportedly sustained billions of dollars in out-of-pocket losses. This shareholder-derivative action asserted contractual and tort claims against various officers and directors of HealthSouth Corporation and various business entities that had had dealings with HealthSouth Corporation, including E & Y, HealthSouth Corporation’s independent auditor during the period when the accounting fraud occurred. This Court is no stranger to this litigation; various aspects of the action have previously come before us. See Scrushy v. Tucker, 70 So.3d 289 (Ala.2011); Scrushy v. Tucker, 955 So.2d 988 (Ala.2006); and Ernst & Young, LLP v. Tucker, 940 So.2d 269 (Ala.2006).
This particular appeal concerns only the claims against E & Y and the subsequent arbitration award related to those claims. HealthSouth asserted audit-malpractice claims against E & Y premised upon E & Y’s failure to discover the accounting fraud at HealthSouth Corporation, or, alternatively, E & Y’s failure to report its discovery of the accounting fraud. Pursuant to the arbitration provision of the engagement agreement between HealthSouth Corporation and E & Y pursuant to which E & Y was to audit the financial statements of HealthSouth Corporation, the circuit court, on December 29, 2004, entered an order referring HealthSouth’s claims against E & Y to arbitration. This Court affirmed the circuit court’s arbitration order in Ernst & Young, LLP v. Tucker, supra. For a detailed procedural background concerning the claims against E & Y and the referral of those claims to arbitration, see Ernst & Young, 940 So.2d at 270-80.
Following the referral of this case to arbitration, the parties selected a panel of three neutral arbitrators.[2] The arbitration hearing began on July 12, 2010. In September 2011, E <& Y sought leave to file a dispositive motion af the close' of Health-South’s case-in-chief based on affirmative defenses raised in E & Y’s answer. HealthSouth objected to the request on the grounds that the applicable arbitration rules contained no provision permitting the dispositive motion and that the motion would require HealthSouth to recalibrate its strategy to rebut E & Y’s affirmative defenses during its case-in-chief. The arbitration panel overruled HealthSouth’s objections, finding that the panel had the authority to permit dispositive motions at the close of evidence and noting that HealthSouth had been aware of the specific defenses from the outset of the hearing.[3] *1267 The panel, however, ruled that Health-South would be allowed the opportunity to present all relevant evidence and witnesses it thought necessary to oppose E & Y’s dispositive motion before that motion would be heard. HealthSouth rested on March 1, 2012. During its case-in-chief, HealthSouth called 14 live witnesses who testified over 81 days spread over nearly 2 years. HealthSouth also presented the testimony of 61 witnesses by video designation and thousands of pages of exhibits.
Upon the close of HealthSouth’s case-in-chief, E & Y filed its dispositive motion requesting an award in favor of E & Y on all of HealthSouth’s claims against it. The motion was based on Alabama’s Hinkle rule[4] and the doctrine of in pari delicto. E & Y also argued that Health-South’s negligence claims were barred by the doctrine of contributory negligence. In short, E & Y contended that the fraud committed by HealthSouth Corporation’s officers and directors, imputed to Health-South, precluded HealthSouth’s recovery under Alabama law. HealthSouth responded that accepting E & Y’s affirmative defenses would be to allow an auditor a “free pass” to engage in malpractice. HealthSouth argued that E & Y had contractually agreed to provide HealthSouth Corporation “reasonable ... assurance” that its financial statements were “free of material misstatement caused by” management fraud. Thus, HealthSouth argued that granting E & Y’s dispositive motion would essentially immunize E & Y and render the engagement agreement illusory.
HealthSouth and E & Y submitted extensive briefing concerning E & Y’s motion. The panel then held a three-day oral argument. A review of the record of the oral argument reveals that each member of the panel actively engaged and questioned counsel for E & Y and HealthSouth regarding their respective positions. The transcript indicates that the panel was familiar with the cases and authorities cited by the parties and that it worked hard, and in apparent good faith, to understand the parties’ positions and applicable Alabama law.
On December 18, 2012, the panel issued its unanimous decision, denying and dismissing all of HealthSouth’s claims. The panel’s award was supported by a 25-page decision, setting forth various findings of fact and applying Alabama law. The panel summarized some of the evidence presented during the proceedings as follows:
“As part of their jobs, HealthSouth [Corporation] officials entered hundreds of fraudulent journal entries into [HealthSouth Corporation’s] general ledger, designed computer programs to distribute the fraud among the over 1800 HealthSouth [Corporation] facilities, created false accounting records, and issued fraudulent financial statements, press releases, and other public disclosures. Day after day — and year after year — [HealthSouth Corporation’s] officers, directors and employees labored to conceal the fraud from the investing public, governmental entities, and especially [E & Y]. Regular meetings were presided over by the most senior HealthSouth [Corporation] officials at HealthSouth [Corporation] offices during regular working hours to develop and execute plans and strategies to perpetuate the fraud. Significantly, *1268 the record establishes that the actions of the HealthSouth [Corporation] officers, directors and employees engaged in the fraud were intended by them to benefit HealthSouth [Corporation] rather than create benefits for themselves, individually.”
After summarizing the evidence, the panel engaged in an analysis of Alabama law.[5] First, the panel concluded that, under Alabama law, the misconduct and knowledge of HealthSouth Corporation’s officers, directors, and employees who had engaged in the fraud must be imputed to Health-South. The panel reasoned that § 8-2-7, Ala.Code 1975, could be invoked to impute to HealthSouth the conduct of Health-South Corporation’s officers, directors, and employees.[6] The panel also relied on Todd v. Modern Woodmen of America, 620 So.2d 591 (Ala.1993), in which this Court held that the conduct of an agent may be imputed to the principal where, as the panel found here, the agent’s wrongful acts were (1) ‘“in the line and scope of his employment’” or (2) “‘in furtherance of the business of [the principal].’ ” 620 So.2d at 593 (quoting Joyner v. AAA Cooper Transp., 477 So.2d 364, 365, (Ala.1985)). The panel also rejected HealthSouth’s argument that imputation of conduct is available only to support a plaintiffs claims, and not a defendant’s affirmative defenses.[7] Likewise, the panel imputed the knowledge of HealthSouth Corporation’s officers, directors, and employees of the fraud to the company, citing § 8-2-8, Ala. Code 1975;[8] Stone v. Mellon Mortg. Co., 771 So.2d 451, 457 (Ala.2000) (“An agent’s knowledge can bind the principal if the agent acquired the knowledge while acting within the line and scope of his authority... .”); and American Cent. Life Ins. Co. v. First Nat’l Bank, 206 Ala. 535, 536, 90 So. 294, 294 (1921) (“[W]hen, in the course of his employment, an agent acquires knowledge or receives notice of any fact material to the business he is employed to transact, his principal is deemed *1269 to have notice of such fact.”).[9] The panel concluded:
“In sum, dozens of HealthSouth [Corporation] officers, directors and employees learned of the fraud in the course of their employment and as part of their jobs. They were paid by HealthSouth [Corporation] to develop, strategize, and carry out the fraud as part of their duties. Because they acquired this knowledge and engaged in this misconduct ‘while acting within the line and scope’ of their authority, both the conduct and knowledge of these agents must be imputed to their principal, HealthSouth [Corporation].”
Having imputed to HealthSouth the conduct and knowledge of HealthSouth Corporation’s employees, the panel concluded that several Alabama legal doctrines barred recovery by HealthSouth. First, the panel set forth Alabama’s “Hinkle Rule,” enunciated by this Court in Hinkle v. Railway Express Agency, 242 Ala. 374, 378, 6 So.2d 417, 421 (1942): “A person cannot maintain a cause of action if, in order to establish it, he must rely in whole or in part on an illegal or immoral act or transaction to which he is a party.” Citing this Court’s application of the Hinkle rule in several recent cases,[10] the panel concluded:
“HealthSouth’s claims clearly rely ‘in whole or in part on an illegal or immoral act or transaction.’ HealthSouth’s causes of action are all predicated on [E & Ts] failure to detect HealthSouth’s criminal fraud. Absent the fraud, there is no claim and there are no damages. HealthSouth’s criminal and immoral acts are central to HealthSouth’s claims. Based upon application of the Hinkle rule, HealthSouth’s claims must be dismissed.”
The panel also concluded that Health-South’s claims were due to be dismissed under the doctrine of in pari delicto. Quoting this Court’s decision in Robinson v. Boohaker, Schillaci & Co., 767 So.2d 1092 (Ala.2000), the panel noted that, “ ‘[w]here the fault is mutual, the law will leave the case as it finds it.’ ” The panel concluded:
“HealthSouth, the company that committed the fraud, is more at fault than [E & Y], which allegedly failed to detect that fraud. Certainly, HealthSouth is at least in equal fault. ' Thus, as required by Alabama law, we leave the parties ‘where they have placed themselves.’ HealthSouth’s claims must be dismissed under the rule of in pari delicto.”
Furthermore, the panel concluded that, applying Alabama law, all of HealthSouth’s claims against E & Y grounded in negligence were due to be dismissed based on the doctrine of contributory negligence. The panel’s decision also specifically addressed and rejected a number of arguments made by HealthSouth in its briefs *1270 and during oral argument.[11] The panel’s rejection of these arguments was based on its application and interpretation of Alabama law. Accordingly, the panel dismissed all claims — HealthSouth’s claims and a pending counterclaim asserted by E & Y.[12]
On December 18, 2012, HealthSouth filed a notice of appeal of the award in the Jefferson Circuit Court, and on December 28, 2012, HealthSouth filed a motion to vacate the panel’s award. On February 1, 2013, pursuant to Rule 71B(f), Ala. R. Civ. P., the circuit court entered the award as a final judgment of the court. On that same day, HealthSouth renewed its motion to vacate the judgment entered on the award and filed a supporting brief. HealthSouth argued that the arbitration award was due to be vacated under two of the vacation provisions of the Federal Arbitration Act (“the FAA”), 9 U.S.C. § 10(a)(3) and (a)(4):
“(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any parties have been prejudiced; or
“(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.”
Specifically, HealthSouth argued that the arbitrators exceeded their powers by “disregarding binding principles of Alabama law that the parties agreed would govern.” HealthSouth also argued that the arbitrators were guilty of misconduct by permitting E & Y to file its dispositive motion at the close of HealthSouth’s case-in-chief.
Following briefing and oral argument, the circuit court, on April 25, 2013, denied HealthSouth’s motion. The circuit court, which had presided over other aspects of the HealthSouth litigation, summarized the panel’s decision and concluded that HealthSouth’s arguments were not well taken. The circuit court stated:
“This Court is very familiar with the massive fraud that occurred at Health-South [Corporation] from at least 1996 until February 2002. As this Court has previously held, issues of imputation of wrongful and dishonest knowledge and acts to the corporate principal and the adverse interest exception to imputation of their knowledge and acts in cases such as this case involve questions of fact for the fact finder, in this case the arbitration panel.
“Even if this Court disagreed with the factual findings of the arbitration panel regarding imputation, in pari delicto and the Hinkle rule, this Court would not be authorized to substitute its judg *1271 ment in place of the judgment of the arbitration panel on these issues of fact.
“Having considered the arbitration award, the various briefs and exhibits submitted by the parties, and having considered the oral argument of the parties, the Court concludes HealthSouth’s motion to vacate is not well taken and is hereby denied. The award of the arbitration panel is hereby affirmed and all claims in the consolidated action against [E & Y] are hereby dismissed with prejudice.”
HealthSouth appeals.
II. Standard of Review
HealthSouth argues that the circuit court erred in refusing to vacate the arbitration award in favor of E & Y. Judicial review of an arbitration award, however, is extremely limited, and a court may not vacate an award unless the party attacking the award clearly establishes one of the grounds for vacating an award specified in 9 U.S.C. § 10.
“‘“Where parties, as in this case, have agreed that disputes should go to arbitration, the role of the courts in reviewing the arbitration award is limited. Transit Casualty Co. v. Trenwick Reinsurance Co., 659 F.Supp. 1346 (S.D.N.Y.1987), affirmed, 841 F.2d 1117 (2d Cir.1988); Saxis Steamship Co. v. Multifacs International Traders, Inc., 375 F.2d 577 (2d Cir.1967). On motions to confirm or to vacate an award, it is not the function of courts to agree or disagree with the reasoning of the arbitrators. Application of States Marine Corp. of Delaware, 127 F.Supp. 943 (S.D.N.Y.1954). Courts are only to ascertain whether there exists one of the specific grounds for vacation of an award. Saxis Steamship Co. A court cannot set aside the arbitration award just because it disagrees with it; a policy allowing it to do so would undermine the federal policy of encouraging the settlement of disputes by arbitration. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); Virgin Islands Nursing Association’s Bargaining Unit v. Schneider, 668 F.2d 221 (3d Cir.1981). An award should be vacated only where the party attacking the award clearly establishes one of the grounds specified [in 9 U.S.C. 10]. Catz American Co. v. Pearl Grange Fruit Exchange, Inc., 292 F.Supp. 549 (S.D.N.Y.1968).” ’
“[R.P. Indus., Inc. v. S & M Equip. Co.,] 896 So.2d [460,] 464 [ (Ala.2004) ] (quoting Maxus, Inc. v. Sciacca, 598 So.2d 1376, 1380-81 (Ala.1992)). The standard by which an appellate court reviews a trial court’s order confirming an arbitration award under the Federal Arbitration Act is that questions of law are reviewed de novo and findings of fact are reviewed only for clear error. See Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1289 (11th Cir.2002).”
Hereford v. D.R. Horton, Inc., 13 So.3d 375, 378 (Ala.2009).
III. Analysis
Courts must enforce awards entered in arbitration proceedings conducted pursuant to the FAA unless the challenging party establishes that vacatur is appropriate based on one of the grounds enumerated in 9 U.S.C. § 10(a) of the FAA. Cavalier Mfg., Inc. v. Gant, 143 So.3d 762, 769 (Ala.2013). Section 10(a) provides:
“(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon *1272 the application of any party to the arbitration—
“(1) where the award was procured by corruption, fraud, or undue means;
“(2) where there was evident partiality or corruption in the arbitrators, or either of them;
“(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
“(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.”
HealthSouth contends that the arbitration award in this case is due to be vacated for two general reasons falling under §§ 10(a)(3) and (4). First, HealthSouth argues that the arbitrators “exceeded their powers” because, HealthSouth says, they “ignored foundational rules of Alabama law repeatedly invoked by HealthSouth.” HealthSouth’s brief, at 22. Second, HealthSouth argues that the arbitrators “engaged in prejudicial misconduct when they made arbitrary procedural rulings and refused to consider relevant evidence unfavorable to E & Y.” HealthSouth’s brief, at 23.
A. Whether the Arbitrators Exceeded Their Powers
HealthSouth invokes § 10(a)(4) of the FAA and argues that the arbitrators exceeded their powers by “ignoring” Alabama law in critical respects. A party invoking § 10(a)(4) of the FAA has a heavy burden. The United States Supreme Court has recently stated:
“A party seeking relief under ' [§ 10(a)(4) ] bears a heavy burden. ‘It is not enough ... to show that the [arbitrator] committed an error — or even a serious error.’ Stolt-Nielsen[ S.A. v. AnimalFeeds International Corp., 559 U.S. 662, 671 (2010) ]. Because the parties ‘bargained for the arbitrator’s construction of their agreement,’ an arbitral decision ‘even arguably construing or applying the contract’ must stand, regardless of a court’s view of its (de)mer-its. Eastern Associated Coal Corp. v. Mine Workers, 531 U.S. 57, 62 (2000) (quoting Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599 (1960); Paperworkers v. Misco, Inc., 484 U.S. 29, 38 (1987); internal quotation marks omitted). Only if ‘the arbitrator act[s] outside the scope of his contractually delegated authority’ — issuing an award that ‘simply reflects] [his] own notions of [economic] justice’ rather than ‘drawing] its essence from- the contract’ — may a court overturn his determination. Eastern Associated Coal, 531 U.S. at 62 (quoting Misco, 484 U.S. at 38). So the sole question for us is whether the arbitrator (even arguably) interpreted the parties’ contract, not whether he got its. meaning right or ■wrong.”
Oxford Health Plans LLC v. Sutter, — U.S.-,-, 133 S.Ct. 2064, 2068, 186 L.Ed.2d 113 (2013).
HealthSouth claims that the panel exceeded its authority by ignoring Alabama law in several key respects. Health-South’s brief summarizes the particular areas of law it claims the panel ignored:
“a. The Arbitrators ignored (ie., never even mentioned) Alabama law clearly foreclosing arguments that immunize auditors from malpractice liability *1273 {e.g., Blumberg v. Touche Ross & Co., 514 So.2d 922, 927 (Ala.1987)) — relying instead on contrary New York law.
“b. The Arbitrators ignored {i.e., never even mentioned) Alabama law forbidding arguments that render contracts illusory (e.g., Childersburg Bancorporation, Inc. v. People State Bank of Commerce, 962 So.2d 248, 260 (Ala.Civ.App.2006))—instead rendering E & Ys audit contracts meaningless.
“c. The Arbitrators ignored Alabama law holding that imputation ‘does not apply1 when, as here, ‘the facts do not warrant an expectation that the agent will make a disclosure to his principal.’ National Union Fire Insurance Co. v. Lomax Johnson Insurance Agency, Inc., 496 So.2d 737, 739 (Ala.1986).
“d. The Arbitrators ignored Alabama law holding that imputation does not apply to contractual relationships like the one between HealthSouth [Corporation] and E & Y, in which one party undertakes to protect the other from its employees’ misconduct. National Union, 496 So.2d at 740.
“e. The Arbitrators ignored (i.e., never even mentioned) Alabama law reserving imputation-based defenses for ‘innocent’ defendants (e.g., Tatum v. Commercial Bank & Trust Co. 69 So. 508, 511-12 (Ala.1915)) — instead applying imputation in the face of undisputed evidence of E & Y’s intentional misconduct.”
HealthSouth’s brief, at 22-23.
A review of the panel’s 25-page decision and the record of the 3-day oral argument concerning E & Ys dispositive motion reveals HealthSouth’s arguments to be mostly hollow. The panel’s decision discussed each of the above topics under Alabama law, distinguishing some of, but not all, the cases cited by HealthSouth. Nevertheless, although the panel’s decision did not directly address each authority cited by HealthSouth, HealthSouth’s assertion that the panel’s discussion of Alabama law was no more than “prophylactic” cover for its decision to “consciously ignore” Alabama law in favor of “foreign authorities” is without basis. HealthSouth simply contends that the panel’s award was in error because it disregarded binding Alabama precedent. In this respect, HealthSouth’s argument must be viewed as an argument that the panel “manifestly disregarded” Alabama law. Whether true or not, this Court has held that “manifest disregard of the law” is not a valid basis for vacating an arbitration award. Hereford, 13 So.3d at 381 (“[M]anifest disregard of the law is no longer an independent and proper basis under the Federal Arbitration Act for vacating, modifying, or correcting an arbitrator’s award.”); Cavalier, 143 So.3d at 768 (“We decline [the] invitation to give further life to the concept of manifest disregard of the law.”).
This case is nearly indistinguishable from Cavalier Manufacturing, Inc. v. Gant, supra. In that case, a mobile-home manufacturer sought to set aside an arbitration award in favor of the purchaser of a mobile home. The manufacturer, like HealthSouth here, argued that the arbitrator had ignored Alabama law in numerous respects. We rejected that argument, holding that “manifest disregard of the law” was not a basis for setting aside an arbitration award:
“Cavalier seeks to establish that the relevant legal principles were well defined and were called to the arbitrator’s attention; yet, Cavalier argues, the arbitrator nevertheless chose to ignore those identified principles. This approach is essentially consistent with those cases in which this Court has discussed manifest *1274 disregard of the law as a basis for vacating an arbitration award....
“Of course, in Hereford [ v. D.R. Horton, Inc., 13 So.3d 375 (Ala.2009) ], this Court held that manifest disregard of the law was no longer a valid basis for vacating an arbitration award under the FAA, stating:
“ ‘Under the Supreme Court’s decision in Hall Street Associates[, L.L.C. v. Mattel, Inc., 552 U.S. 576 (2008) ], ... manifest disregard of the law is no longer an independent and proper basis under the Federal Arbitration Act for vacating, modifying, or correcting an arbitrator’s award. In light of the fact that the Federal Arbitration Act is federal law, and in light of the Supremacy Clause of the Constitution of the United States, Art. VI, we hereby overrule our earlier statement in Birmingham News [Co. v. Horn, 901 So.2d 27, 50 (Ala.2004),] that manifest disregard of the law is a ground for vacating, modifying, or correcting an arbitrator’s award under the Federal Arbitration Act, and we also overrule any such language in our other cases construing federal arbitration law.’
“13 So.3d at 380-81....
‘Tost-Hereford, this Court has consistently indicated that courts must enforce awards entered in arbitration proceedings conducted pursuant to the FAA unless the challenging party establishes that vacatur is appropriate based on one of the ... grounds enumerated . in § 10(a) of the FAA.... Cavalier now asks this Court to use ... the ... manifest-disregard-of-the-law test ... as a mechanism to determine whether vaca-tur is appropriate based on a § 10(a) ground. Thus, Cavalier argues, if there is evidence indicating that the arbitrator exhibited a manifest disregard of the law, the resulting award is necessarily the product of corruption, fraud, undue means, partiality, misconduct, misbehavior, and/or the arbitrator’s exceeding his or her powers, and the award must accordingly be vacated.
“We decline Cavalier’s invitation to give further life to the concept of manifest disregard of the law. The Supreme Court of the United States has made it clear, and this Court has recognized, that under the FAA the § 10 grounds are the exclusive avenue for seeking va-catur of an arbitration award. As the United States Court of Appeals for the Fifth Circuit stated in Citigroup Global Markets, Inc. v. Bacon, 562 F.3d 349, 358 (5th Cir.2009), the effect of Hall Street Associates is essentially that the phrase ‘manifest disregard of the law,’ ‘as a term of legal art, is no longer useful in actions to vacate arbitration awards.’ We agree.... ”
143 So.3d at 769 (footnote omitted). See also Gower v. Turquoise Props. Gulf, Inc., [Ms. 1120045, Dec. 20, 2013] — So.3d -, - (Ala.2013) (“The fact that the arbitrator appears to have misapplied the law in denying Gower’s claims, however, does not authorize this Court to vacate, the arbitration award under 9 U.S.C. § 10. Federal authorities are abundantly clear that an arbitrator does not exceed his or her powers when the arbitrator misapplies the law.”).
HealthSouth attempts to distinguish Cavalier by arguing that the mobile-home manufacturer in Cavalier made only a “manifest-disregard-of-the-law” argument and “failed to tether its argument to FAA § 10 or cases interpreting it.” Health-South’s reply brief, at 12 n. 3. Further, HealthSouth contends that our holdings in Cavalier and Gower weve unremarkable in *1275 that those cases concerned only “garden-variety” claims that the arbitrator misapplied the law, where here, HealthSouth contends, the panel “ignored Alabama law.” HealthSouth’s reply brief, at 9. HealthSouth’s arguments are unpersuasive. HealthSouth’s arguments are exactly the same as the arguments raised by the mobile-home manufacturer in Cavalier. See 143 So.3d at 770 (“Cavalier seeks to establish that the relevant legal principles were well defined and were called to the arbitrator’s attention; yet, Cavalier argues, the arbitrator nevertheless chose to ignore those identified principles.”). There is no substantive distinction between HealthSouth’s argument that the panel “willfully ignored” the law and the argument that an arbitrator “manifestly disregarded” the law. Thus, we do not question whether the panel “disregarded” or “ignored” the law. “[T]he sole question ... is whether the arbitrator (even arguably) interpreted the parties’ contract, not whether he got its meaning right or wrong.” Oxford Health, — U.S. at-, 133 S.Ct. at 2068.
Nevertheless, HealthSouth contends that the panel exceeded its authority under § 10, because, it says, the panel was duty-bound to apply Alabama law. Health-South argues that when the panel ignored Alabama precedent, it exceeded its authority under the arbitration agreement. In support of this argument, HealthSouth cites Stolt-Nielsen S.A. v. AnimalFeeds Int’l Corp., 559 U.S. 662, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010). In Stolt-Nielsen, the plaintiff brought a putative class action against various shipping companies, alleging illegal price-fixing and asserting antitrust claims. The dispute was referred to arbitration pursuant to an arbitration agreement. As a threshold matter, however, the panel of arbitrators was required to determine whether the arbitration clause permitted the class-action claims to proceed in arbitration. The parties stipulated that they had never reached an agreement on class arbitration. After hearing argument and evidence, including testimony from shipping companies’ experts regarding arbitration customs and usage in the maritime trade, the arbitrators concluded that the arbitration clause allowed for class arbitration. On appeal, the United States Supreme Court held that the decision of the arbitrators ordering class proceedings was due to be vacated. The Supreme Court held that because the parties had never agreed to arbitrate class-action claims, the arbitrators had no contractual basis to order class-action arbitration. In effect, the Court stated, the arbitrators had merely imposed their own idea of sound policy, without a contractual basis. Accordingly, the Court held that the arbitrators had exceeded the authority granted to them by the parties’ arbitration agreement.
HealthSouth contends that Stolt-Niel-sen is on all fours with this case. Health-South’s reliance on Stolt-Nielsen, however, is unavailing, particularly in light of the Supreme Court’s recent decision in Oxford Health Plans LLC, supra. In Oxford Health, a physician plaintiff filed a proposed class-action lawsuit against Oxford Health Plans, alleging that Oxford failed to promptly pay him and other physicians who had entered into employment contracts with Oxford. The suit was referred to arbitration, and the parties agreed that the arbitrator should decide whether the arbitration clause in their contract authorized class arbitration. The arbitrator found that the arbitration clause unambiguously evinced an intention to allow class arbitration. Citing Stolt-Nielsen, Oxford sought to have the arbitrator’s decision set aside on the ground that the arbitrator failed to properly interpret the arbitration *1276 agreement. The Supreme Court rejected Oxford’s reliance on Stolt-Nielsen:
“But Oxford misreads Stoltr-Nielsen: We overturned the arbitral decision there because it lacked any contractual basis for ordering class procedures, not because it lacked, in Oxford’s terminology, a ‘sufficient’ one. The parties in Stolt-Nielsen had entered into an unusual stipulation that they had never reached an agreement on class arbitration. ... In that circumstance, we noted, the panel’s decision was not — indeed, could not have been — ‘based on a determination regarding the parties’ intent.’ [559 U.S. at 673 n. 4] (‘Th[e] stipulation left no room for an inquiry regarding the parties’ intent’). Nor, we continued, did the panel attempt to ascertain whether federal or state law established a ‘default rule’ to take effect absent an agreement.... Instead, ‘the panel simply imposed its own conception of sound policy’ when it ordered class proceedings. Id., at 675. But ‘the task of an arbitrator,’ we stated, ‘is to interpret and enforce a contract, not to make public policy.’ Id., at 672. In ‘imposing] its own policy choice,’ the panel ‘thus exceeded its powers.’ Id., at 677.
“The contrast with this case is stark. In Stoltr-Nielsen, the arbitrators did not construe the parties’ contract, and did not identify any agreement authorizing class proceedings. So in setting aside the arbitrators’ decision, we found not that they had misinterpreted the contract, but that they had abandoned their interpretive role. Here the arbitrator did construe the contract (focusing, per usual, on its language), and did find an agreement to permit class arbitration. So to overturn his decision, we would have to rely on a finding that he misapprehended the parties’ intent. But § 10(a)(4) bars that course: It permits courts to vacate an arbitral decision only when the arbitrator strayed from his delegated task of interpreting a contract, not when he performed that task poorly. Stoltr-Nielsen and this case thus fall on opposite sides of the line that § 10(a)(4) draws to delimit judicial review of arbitral’decisions.”
— U.S. at -, 133 S.Ct. at 2069-70. Accordingly, the Court held that the arbitrators did not exceed their powers.
Much as was the case in Oxford Health, HealthSouth’s reliance on Stolt-Nielsen is misplaced. The arbitration agreement in this case required the panel to apply Alabama law in resolving the claims brought by HealthSouth against E & Y. The panel has arguably, and in apparent good faith, done so. Whether the panel correctly applied Alabama law is not a question properly before this Court. As the United States Supreme Court concluded in Oxford Health:
“[Cjonvincing a court of an arbitrator’s error — even his grave error — is not enough. So long as the arbitrator was ‘arguably construing’ the contract— which this one was — a court may not correct his mistakes under § 10(a)(4).... The potential for those mistakes is the price of agreeing to arbitration. As we have held before, we hold again: ‘It is the arbitrator’s construction [of the contract] which was bargained for; and so far as the arbitrator’s decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.’ ... The arbitrator’s construction holds, however good, bad, or ugly.”
— U.S. at-, 133 S.Ct. at 2070-71.
In this case, HealthSouth obviously disagrees with the panel’s interpretation of *1277 Alabama law. Nevertheless, HealthSouth bargained for the arbitrators’ interpretation of Alabama law, and HealthSouth’s argument that the panel “ignored” or disregarded key aspects of Alabama must be rejected.
Next, HealthSouth argues the panel exceeded its powers by granting E & Y relief on its affirmative defenses despite what HealthSouth characterizes as “the arbitration agreement’s plain language, which strictly limits the Arbitrators’ remedial authority.” HealthSouth’s brief, at 60. The arbitration agreement in question provides that the arbitrators “may not award non-monetary or equitable relief of any sort.”[13] HealthSouth contends that E & Y’s affirmative defenses are fundamentally equitable in nature and, therefore, that the panel violated the language of the arbitration agreement, and thus exceeded its authority, when it granted E & Y’s disposi-tive motion based upon those affirmative defenses.
A critical problem with HealthSouth’s argument that the panel was not authorized to rule on E & Y’s affirmative defenses is that HealthSouth failed to raise this argument before the panel entered its award. The first time HealthSouth raised this particular argument was in a footnote to its 70-page brief to the circuit court in support of its motion to vacate the panel’s award. Indeed, not only did HealthSouth make no objection to the panel concerning the arbitrability of E & Y’s’ affirmative defenses, but HealthSouth itself submitted the same affirmative defenses to E & Y’s counterclaim. In R.P. Industries, Inc. v. S & M Equipment Co., 896 So.2d 460 (Ala.2004), this Court held that a. party who failed to raise an objection to an arbitration panel’s ability to award attorney fees before the panel entered its award, and who itself had requested an attorney-fee award, had waived its objection that the panel exceeded its powers in making such an award. Likewise, HealthSouth’s failure to timely object to the submission to the panel of E & Ys “equitable” affirmative defenses resulted in a waiver of that issue. Consequently, the panel did not exceed its power by granting relief based on E & Y’s. affirmative defenses.
The circuit court’s denial of Health-South’s motion to set aside the panel’s award on the basis that the panel “exceeded [its] powers” is due to be affirmed.
B. Whether the Arbitrators Were Guilty of Misconduct
Next, HealthSouth contends that the panel’s award is due to be vacated on the ground that the panel engaged in “misconduct” that materially prejudiced *1278 HealthSouth. In order to establish “misconduct” under § 10(a)(3), HealthSouth must demonstrate that the arbitration proceedings were fundamentally unfair.
“Courts have interpreted section 10(a)(3) to mean that except where fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review. In making eviden-tiary determinations, an arbitrator ‘need not follow all the niceties observed by the ... courts.’ Bell Aerospace Co. Div. of Textron v. Local 516, 500 F.2d 921, 923 (2d Cir.1974). However, although not required to hear all the evidence proffered by a party, an arbitrator ‘must give each of the parties to the dispute an adequate opportunity to present its evidence and argument.’ Hoteles Condado Beach v. Union De Tronquistas Local 901, 763 F.2d 34, 39 (1st Cir.1985).... ‘[C]ourts do not superintend arbitration proceedings. Our review is restricted to determining whether the procedure was fundamentally unfair.’ See Teamsters, Local Union 657 v. Stanley Structures, Inc., 735 F.2d 903, 906 (5th Cir.1984); accord Concourse Beauty School, Inc. v. Polakov, 685 F.Supp. 1311, 1318 (S.D.N.Y.1988) (‘The misconduct must amount to a denial of fundamental fairness of the arbitration proceeding in order to warrant vacating the award.’ ...).”
Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d Cir.1997).
First, HealthSouth claims that the panel’s decision even to entertain E & Y’s dispositive motion constituted misconduct. In light of the record before us, the panel’s decision to allow E & Y to file a dispositive motion at the close of HealthSouth’s casein-chief was not fundamentally unfair. The panel undoubtedly had the authority to accept E & Y’s motion. See Birmingham News Co. v. Horn, 901 So.2d 27, 55 (Ala.2004) (“ ‘ “ ‘Procedural questions’ which grow out of the dispute and bear on its final disposition” are presumably not for the judge, but for an arbitrator, to decide.’ ” (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002))). Health-South was aware of the affirmative defenses raised by E & Y from the outset of the proceeding. E & Y sought leave to file the motion more than five months before HealthSouth rested its case-in-chief, and the panel gave HealthSouth the opportunity to add additional witnesses to its casein-chief, so that E & Y’s motion would be heard only “after HealthSouth has had a full opportunity to present all its relevant evidence.” Allowing E & Y to submit a dispositive motion at the close of Health-South’s case-in-chief does not constitute “misconduct,” and HealthSouth cites no authority indicating otherwise.
Finally, HealthSouth contends that the panel committed misconduct by unfairly refusing to consider relevant testimony — namely, the testimony of Wayne Dunn, the senior manager assigned by E & Y to the HealthSouth Corporation audits. Dunn was called as part of E & Y’s case-in-chief, which .began after Health-South rested, and during the time the panel provided for briefing on E & Y’s dispositive motion. Dunn’s testimony is important, according the HealthSouth, because, HealthSouth says, it showed that E & Y was not “innocent.” This showing was important, argues HealthSouth, because E & Y’s imputation-based affirmative defenses are, under Alabama law, reserved for “innocent” defendants. Thus, HealthSouth continues, E & Y could not impute the fraud of HealthSouth Corporation’s officers, directors, and employees to the company. Accordingly, HealthSouth contends, Dunn’s testimony was important to refuting E & Y’s motion and the panel’s *1279 refusal to consider his testimony constitutes “misconduct.” There are number of reasons why this argument is unconvincing.
First, as E & Y points out, it is unclear whether the panel considered Dunn’s testimony. Although the panel stated that the “record” for the purpose of E & Y’s motion would be the evidence presented during HealthSouth’s case-in-chief, the panel heard Dunn’s testimony and mentioned it during oral argument on the motion. Second, the panel, interpreting Alabama law, rejected HealthSouth’s legal argument that E & Y could raise its imputation-based defenses only if E & Y were deemed “innocent.” Once it rejected this legal argument, the panel had no reason to consider the factual testimony of Dunn. Third, HealthSouth’s entire case-in-chief was calculated to prove its claim that E & Y had failed to properly perform its job — that E & Y was not innocent. Thus, Dunn’s testimony was arguably cumulative. Fourth, viewing E & Y’s motion as akin to a Rule 50, Ala. R. Civ. P., motion for a judgment as a matter of law presented at the close of a plaintiffs case, the panel had no obligation to consider testimony offered after HealthSouth had rested its case. Indeed, E & Y could have chosen to put on no ease at all. Finally, HealthSouth had the opportunity to call Dunn as a witness in its case-in-chief and chose not to.
Based on the record before us, Health-South has not established “misconduct” on the part of the panel. HealthSouth was provided a full and fair opportunity to present its case and to oppose E & Y’s dispositive motion. HealthSouth was provided unlimited time to present its case and was permitted to call any relevant witness. Over the course of 81 days of live testimony HealthSouth presented 14 live witness, 61 witnesses by video designation, and thousands of pages of exhibits.[14] The proceedings were, by all the evidence before us, “fundamentally fair.” Accordingly, the circuit court properly denied HealthSouth’s motion to vacate the arbitration award on misconduct grounds.
IV. Conclusion
HealthSouth has failed to show that the arbitration panel exceeded its powers or engaged in misconduct. Accordingly, the order of the circuit court entering judgment on the arbitration award is due to be affirmed.
AFFIRMED.
STUART, BOLIN, WISE, and BRYAN, JJ., concur.
MOORE, C.J., and PARKER, MURDOCK, and SHAW, JJ., concur in the result.

. HealthSouth’s complaint asserted 13 separate claims against E & Y: claims alleging fraud, fraudulent suppression, aiding and abetting fraud, concert of action and conspiracy to defraud, reckless and negligent misrepresentations, breach of contract, professional malpractice/negligence, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conspiracy to breach a fiduciary duty, unjust enrichment, and reckless and wanton conduct and a claim seeking the entry of a declaratory judgment regarding punitive damages. The heart of those claims, however, were the allegations that E & Y violated Generally Accepted Accounting Standards and failed to detect the fraud.

. The panel was selected by the parties pursuant to the procedures of the American Arbitration Association.

. HealthSouth and E & Y submitted letter briefs to the panel concerning their respective positions on E & Y’s ability to file the disposi-tive motion. The panel considered the arguments and authorities cited in the parties' briefs and on oral argument. The panel issued a four-page order addressing Health-South’s objections and concluding that E & Y could file the motion.

. "A person cannot maintain a cause of action if, in order to establish it, he must rely in whole or in part on an illegal or immoral act or transaction to which he is a party.” Hin-kle v. Railway Express Agency, 242 Ala. 374, 378, 6 So.2d 417, 421 (1942). See discussion infra.

. Given the standard of review we must apply in this case, we express no position in this opinion as to whether the panel correctly analyzed and applied Alabama law. As discussed further below, as well as in our recent decisions concerning the review of arbitration awards under 9 U.S.C. § 10(a), an arbitration award may not be set aside because this Court disagrees with the arbitrators' reasoning — even if it believes that the arbitrators gravely misapplied the law. See, e.g., Oxford Health Plans LLC v. Sutter, — U.S. -, -, 133 S.Ct. 2064, 2070, 186 L.Ed.2d 113 (2013) ("[Convincing a court of an arbitrator's error — even his grave error — is not enough. So long as the arbitrator was ‘arguably construing’ the contract ... a court may not correct his mistakes under § 10(a)(4).”); Hereford v. D.R. Horton, Inc., 13 So.3d 375, 378 (Ala.2009).

. Section 8-2-7 provides: "Unless required by or under the authority of law to employ that particular agent, a principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent as a part of the transaction of such business, and for his willful omission to fulfill the obligations of the principal.”

. In rejecting HealthSouth’s imputation argument, the panel relied on the following Alabama cases: White-Spunner Constr., Inc. v. Construction Completion Co., 103 So.3d 781 (Ala.2012) (plurality opinion); Robinson v. Boohaker, Schillaci & Co., 767 So.2d 1092 (Ala.2000); J & M Bail Bonding Co. v. Hayes, 748 So.2d 198 (Ala.1999); Pacific Mut. Life Ins. Co. v. Haslip, 553 So.2d 537 (Ala.1989); Alfa Mut. Ins. Co. v. Roush, 723 So.2d 1250 (Ala.1998); and Reynolds v. Crown Pontiac, Inc., 753 So.2d 522 (Ala.Civ.App.1999).

. Section 8-2-8 states: "As against a principal, both principal and agent are deemed to have notice of whatever either has notice of and ought in good faith and the exercise of ordinary care and diligence to communicate to the other.”

. The panel also relied upon the following statement from Ex parte HealthSouth Corp., 978 So.2d 745, 753 (Ala.2007), a case where HealthSouth Corporation sought a refund for taxes overpaid as a result of- its listing fictitious items of personal property on its tax returns as part of the same fraudulent accounting scheme at issue here: " ‘Health-South [Corporation] cannot be permitted to take advantage of its own wrong by receiving a refund based on its own inequitable conduct.’ ” (Quoting HealthSouth Corp. v. Jefferson Cnty. Tax Assessor, 978 So.2d 737, 745 (Ala.Civ.App.2006).)

. In addition to Hinkle, the panel cited: Limestone Creek Developers, LLC v. Trapp, 107 So.3d 189 (Ala.2012); White-Spunner Constr., Inc. v. Construction Completion Co., 103 So.3d 781 (Ala.2012) (plurality opinion); Ex parte W.D.J., 785 So.2d 390, 392 (Ala.2000); and Oden v. Pepsi Cola Bottling Co. of Decatur, 621 So.2d 953 (Ala.1993).

. The panel discussed and rejected Health-South’s contention that the “adverse interest” exception to imputation applied; it rejected HealthSouth's argument that our decision in National Union Fire Insurance Co. v. Lomax Johnson Insurance Agency, 496 So.2d 737 (Ala.1986), prohibited the imputation of fraudulent conduct by HealthSouth Corporation’s officers, directors, and employees to HealthSouth; and it rejected HealthSouth’s argument that there should be no imputation of conduct to HealthSouth because E & Y was not itself “innocent” of wrongdoing.

. E & Y had asserted a counterclaim against HealthSouth, and the counterclaim was also before the arbitration panel. E & Y, however, had informed the panel that if it was inclined to grant E & Y’s dispositive motion with respect to HealthSouth’s claims, E & Y would dismiss its counterclaim. The panel's decision noted that E & Y had agreed to dismiss its pending counterclaim in the event Health-South’s claims were dismissed. Accordingly, the panel dismissed all claims — HealthSouth's claims and E & Y's counterclaim.

. The agreement, in full, provides:
‘‘The arbitration will be conducted before a panel of three arbitrators, regardless of the size of the dispute, to be selected as provided in the [American Arbitration Association] Rules. Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of these procedures, including any contention that all or part of these procedures are invalid or unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. No potential arbitrator may serve on the panel unless he or she has agreed in writing to abide and be bound by these procedures. "The arbitrators may not award non-monetary or equitable relief of any sort. They shall have no power to award punitive damages or any other damages not measured by the prevailing party’s actual damages, and the parties expressly waive their right to obtain such damages in arbitration or in any other forum. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitrators have power to make an award or impose a remedy that could not be made or imposed by a court deciding the -matter in the same jurisdiction.”

. E & Y notes that HealthSouth’s exhibits included hundreds of pages of Dunn's deposition testimony, although these exhibits are apparently not in the record on appeal.